J. H. CRONAN, Respondent, v. L. E. STUTSMAN et al., Appellants.

St. Louis Court of Appeals, November 12, 1912.

1. **DAMAGES: Nominal Damages.** One who proves he has been damaged, but fails to prove the amount thereof, can recover only nominal damages.

2. **CONTRACTS: Breach: Damages: Duty to Minimize.** One injured by the breach of a contract must make a reasonable effort to render the injury as light as possible, and if he knows of the failure or neglect of the obligor to do that which he has agreed to do, within ample time to do it himself, and fails to do it, he cannot hold the obligor for loss resulting from such neglect; but where the obligor merely postpones performance and leads the obligee to believe that he will perform, the latter is not required to take steps to minimize the damages until the contract is abandoned by the obligor.

3. ——: ——: ——: ——. In an action for damages for the breach of a contract to float logs, where defendant kept putting off performance until the logs had rotted, saying there was not enough water to float them, plaintiff could not be limited to nominal damages, on the ground that the damage was due to his own failure to float the logs, since defendant's conduct in postponing performance was sufficient to warrant a finding that plaintiff had been led thereby into the belief that defendant intended to perform, and it did not become his duty to float the logs himself, in order to minimize the damages, until he acquired knowledge that defendant had abandoned the contract.

4. ——: ——: Damages: Sufficiency of Evidence: Verdict for Less Amount Than Damages Proved. In an action for the breach of a contract to float logs, plaintiff's claim for damages being that the logs had rotted as a result of defendant's delay, proof that the logs were a total loss and what their market value was, was sufficient to establish the damages sustained, and the fact that the jury returned a verdict for a smaller amount than such evidence proved the market value to be is immaterial, so far as defendant is concerned.

5. PLEADING: Variance. A recovery cannot be had on a different theory than that counted on in the pleadings.

6. CONTRACT: Action for Breach: Instructions. In an action for damages for the breach of a contract to float logs, held that plaintiff's instructions were substantially correct.

7. ——: ——: Evidence: Admissibility. In an action for damages for the breach of a contract to float logs, held that the court did not err in ruling on the admissibility of evidence.

Appeal from Dunklin Circuit Court.—*Hon. J. L. Fort,* Judge.

AFFIRMED.

*Ward & Collins* for appellants.

(1) The failure to perform a contract is a legal wrong, and for the violation of this right, independent of actual damages to the party for whose benefit the performance of the contract is due, nominal damages will be allowed. Fulkerson v. Eades, 19 Mo. App. 620; Dulaney v. Sugar Refining Co., 42 Mo. App. 659; Webber v. Esquire, 51 Mo. App. 601; Fidelity Deposit Co.

v. Colvin, 83 Mo. App. 210; 1 Sutherland on Damages 9-16; Holt v. Railroad, 87 Mo. App. 203. (2) It is the duty of the party injured by a breach of contract to make reasonable effort to avoid damage therefrom; such damage as might by reasonable diligence on his part have been avoided are not to be regarded as a natural and probable result of the defendant's acts. There can be no recovery therefore for damages which might have been prevented by reasonable efforts on the part of the party injured. Lawson on Contracts (2 Ed.), sec. 484; 8 Am. & Eng. Ency. Law (2 Ed.), 605; Douglas v. Stephens, 18 Mo. 362; Fisher v. Goebel, 40 Mo. 475; Waters v. Brown, 44 Mo. 302; State ex rel. v. Powell, 44 Mo. 436; Railroad v. McGrue, 104 Mo. 291; St. Louis v. Brown, 155 Mo. 564; Dietrich v. Railroad, 89 Mo. App. 40; Bridge Co. v. Schaubacher, 57 Mo. 586; Peck v. Roofing Co., 96 Mo. App. 212; Logan v. Railroad, 96 Mo. 464. (3) Where plaintiff, suing for damages, proves damage but not the amount of it, he can only recover judgment except for nominal damage. Brown v. Emerson, 18 Mo. 103; Owen v. O'Reilly, 20 Mo. 603; Mr. Cord v. Railroad, 21 Mo. App. 95; Hayes v. Delzelle, 21 Mo. App. 679; Morrison v. Yancy, 23 Mo. App. 670; Barngrover v. Maack, 46 Mo. App. 407.

*C. G. Shepard* filed argument for respondent.

REYNOLDS, P. J.—Plaintiff and defendants, the latter under the name of Southeast Missouri Cypress Company, were engaged in the business of cutting logs and piles from lands in Pemiscot county and placing the malong the railroad at different points for shipment, the principal shipping point of defendants being at Clay Root, a station on what is known as the St. Louis & Gulf Railroad. Prior to February 27, 1908, having had numerous dealings together growing out of this business, according to the averments of the pe-

tition, a dispute arose between the parties over them, and defendants instituted one and threatened other actions against plaintiff. These actions pending or threatened, on February 27, 1908, as is averred and admitted, the parties compromised and settled all the matters in dispute between them up to that date and entered into a written contract, the execution of which is admitted. In and by that contract defendants agreed, among other things, to float to Clay Root all the oak piles in controversy, these piles to be found in water sufficient to float them to the bayou at the west end of the land on which the timber was cut; defendants to float, skid and load these piles on cars at Clay Root without cost to plaintiff. Defendants agreed that "from the total amount of indebtedness determined by the inspecting of all accounts and notes now at hand, John H. Cronan is to be allowed a reduction of $550; the Southeast Missouri Cypress Company is to assist John H. Cronan in borrowing $500, which shall be added to the said John H. Cronan's indebtedness." Summarizing the remainder of the petition, plaintiff alleges that after the making of this contract the water was sufficient to float the piles to the bayou and remained so long enough to float all of these piles; that in order to handle oak piles of the nature and kind covered by the contract between plaintiff and defendants, it takes large and strong machinery and equipment to haul them out of the water and load them on cars; that defendants at that time had such equipment at Clay Root which they were using in loading piles of like nature; that plaintiff had no such equipment, and was wholly unprepared to handle the piles himself, and was therefore bound to rely solely upon the contract entered into with defendants to handle them and have them placed on cars; that the reasonable market value of the piles was $4411.68; that defendants failed and refused to float the piles except eighty-

eight pieces of the value of $512.96, and that the remainder, of the value of $3899.02, was wholly lost, to plaintiff's damage in that sum.

The answer, as summarized by counsel for defendants, is an "admission of contract and general denial; plea of insufficiency of water, and that plaintiff, knowing of the insufficiency of water over the piling where they lay, refused to put them in water sufficient to float them; permitted them to lay and rot, and the damage, if any, was occasioned by plaintiff's own negligence."

By way of counterclaim the answer further set out that plaintiff is indebted to defendants in the sum of $314.75 on account accruing after making the contract and judgment is prayed for this amount. No issue on the correctness of this counterclaim is now presented.

At the close of the testimony in the case the jury returned a verdict in favor of plaintiff in the sum of $1000, and in favor of defendants on the counterclaim in the sum of $314.75, a balance in favor of plaintiff of $685.25, for which amount judgment went in favor of plaintiff. Filing a motion for new trial as well as one in arrest and these being overruled and exceptions duly saved, defendants have perfected their appeal to this court.

Defendants here make four assignments of error. First, that the verdict is against the evidence and against the law under the evidence and could only have been for nominal damages. Second, that the court erred in giving certain instructions for plaintiff. Third, the court erred in refusing to give certain instructions asked by defendants, and fourth, that it erred in the admission of testimony.

The making of the contract and its terms are admitted. So also it is practically conceded that plaintiff had paid to defendants the $550 of old indebtedness and the $500 raised for him by defendants, in all $1050.

for the work which defendants were to do in dragging out and loading the piles.

As conceded by learned counsel for appellants, many witnesses swore that on one or more rises the water was deep enough to float the oak piles, and as many or more witnesses swore that at no time from the making of the contract until the piles spoiled, which was about a year after this contract had been entered into, did the water get high enough to float these piles. It was agreed by all the witnesses that green oak piles with the sap in them would not float and that to float them required "floaters," that is sticks of light weight timber, such as ash or cypress, to be placed on each side of the oak pile and fastened so as to buoy them. When properly buoyed, the oak piles, said one of the witnesses, could be floated and when floated it would take, say twenty-two inches of water to float an eighteen-inch oak pile. It seems that it was also the custom, in floating this timber, to cut through the swamps and sandy ridges or higher ground to the deeper water, what is called a "float road," that is, as we understand it, a ditch from which stumps and undergrowth were cleared for the requisite depth, and by means of these "float roads," the piles were carried through the swamps and ridges that might intervene between the starting point and the deep bayou down which they were to be floated. It was in evidence that by means of "float roads," the piles could easily have been floated out at different times between the making of the contract and the time when it is alleged that by allowing them to remain they had rotted and become valueless. In their statement before us, counsel for appellants themselves admit that "whether or not the oak piling was ever found in sufficient water to float it, was the question for the jury, and by their verdict they evidently found that it was. Hence we are bound on this appeal by that verdict that there was a breach of the contract." Counsel then argue that "a breach of

this contract without any other or further showing would only entitle plaintiff to a verdict for nominal damages.'' Herein lies the crux of this appeal and on it are based practically all the assignments of error except the fourth.

It may be conceded, as claimed by counsel, that where a plaintiff sues for damages and proves that he has been damaged, but fails to give any evidence tending to prove the amount of his damage, he can recover only nominal damage. Furthermore it is beyond doubt, as also urged by counsel, that it is the duty of the party injured by a breach of contract to make reasonable effort to render the injury as light as possible. If he knows of the failure or neglect of the one with whom he has contracted to perform that contract within ample time to do it himself, and fails to do so, he cannot hold the other for a loss by such neglect. [Lawson on Contracts (2 Ed.), sec. 484. See also City of St. Louis v. Brown, 155 Mo. 545, l. c. 564, 56 S. W. 298.] We do not think that the facts in evidence bring defendants within the protection of these rules.

Counsel for appellants contend, in substance, that plaintiff, when defendants failed to do so, was bound to go in and attempt to float these piles out himself; that he did not undertake to show any excuse why he did not get them out himself and why he ''sat around and let it rot;'' that it was for him to have shown by proof what it would have cost him to take out and load these piles; that this amount was the measure of damage, and that while plaintiff had shown a breach of the contract entitling him to nominal damages, by reason of his failure to prove the cost of doing the work himself, he was not entitled to more than nominal damage.

We are compelled to differ with learned counsel as to the statement that plaintiff had failed to introduce any evidence tending to show any excuse why he

did not get out this timber. Plaintiff, testifying in his own behalf, has given his reason for not doing so. After stating that this timber in the woods was entirely ruined, he testified that neither defendants nor their foreman said they would not take it out before it was ruined; that he (plaintiff) had talked with Mr. Stutsman, one of the defendants, frequently about it; that Stutsman told him there was not sufficient water and that it was so reported by his men. "He said he would bring them down when there was water enough; kept promising he would load these piling when there was sufficient water." On cross-examination plaintiff further testified that Stutsman had told him all the time that there was not sufficient water; that was his claim. "It was according to the report of his men, so he said. I wanted him to go with me and see and he set a day or two to go with me and something came up and he couldn't go, and I got Hammond to go with me. I wanted him to go with me so we could view it together; so we would know it ourselves. I believe if he had gone up there with me he would have put them out; I found sufficient water when I got there."

This was evidence from which the jury had a right to conclude that plaintiff, for almost a year or until the piling had rotted, had been led into the belief that defendants intended to carry out this contract. In short, according to plaintiff, defendants never abandoned the contract, so far as plaintiff knew, until the piles had rotted; had never before then thrown it up, but put off performance from time to time until, by the action of the weather and of the water, the piling had become valueless. If there was no abandonment of the contract on the part of the defendants of which plaintiff was notified, he was under no obligation to go in himself, treat the contract as abandoned and attempt to get out this piling and save it from rot and decay. If he had done that, and brought his action for the expense thereby incurred, he would

probably have been met with the defense that he was
a mere volunteer in going into the work and had him-
self prevented defendants from performance. It is
true that if he found defendants had thrown up their
contract, and he could have gone in and saved this tim-
ber or any of it, it was his duty to do so; but he would
not, in this action, have been entitled, as these refused
instructions said, to the value of his work in doing so,
and his failure to prove what that work would have
cost, did not limit him to nominal damages in this ac-
tion. Plaintiff did not bring this action on any such
theory; that is not his cause of action. It is for breach
of contract and seeks the recovery of damages for the
entire loss of the timber.

It is beyond question that plaintiff introduced tes-
timony tending to prove that by the default of defend-
ants, the timber was a total loss, so far as its market
value as piles was concerned, and that its value was
as alleged in the petition. This was evidence of actual
damage. That the jury did not accept his valuation is
immaterial, and to the loss of plaintiff, but he has not
appealed.

Defendants, however, sought at the trial and now
seek before us, to put this case on another basis, claim-
ing that plaintiff can only recover for what it would
have cost him to float out and load these piles himself.
It was on this theory that the refused instructions were
predicated.

The instruction marked A, which defendants
asked and which the court refused to give, was to the
effect that even if the jury found and believed from
the evidence that defendants broke the contract sued
upon and failed and refused to carry out the provision
to be performed by them, yet under the pleadings and
evidence in the case, the verdict for plaintiff can only
be for nominal damages and by nominal damages is
meant a sum not exceeding one dollar. This instruc-
tion and the others refused proceeded upon the theory

that it was the duty of the plaintiff to have gone in and attempted to save this timber himself, and that the measure of his recovery would be the cost of doing this, and that as he had not given any evidence of that cost, he could recover nominal damages only.

If plaintiff allowed this timber to rot when he could have saved it after knowledge of abandonment of the contract by defendants, he was bound to do so and in that event would be entitled to the cost of effecting salvage and, if not paid, could have brought his action for that cost. But that was not this case. To have instructed that plaintiff could recover the cost of saving this timber, would have allowed action on one cause and recovery on another. This, it has been held in case after case, cannot be allowed.

We discover no reversible error in the instructions given at the instance of plaintiff. They were substantially correct on the theory upon which plaintiff brought his action.

Nor do we find any error to the injury of defendants in the action of the trial court in the admission of evidence.

Upon the whole record we find no error to the prejudice of defendants. In point of fact, considering the amount of the verdict in connection with the evidence in the case, we see no reason for complaint by defendants.

The judgment of the circuit court is affirmed. *Nortoni* and *Caulfield, JJ.*, concur.