Belknap, Jan. 2, 1951. } No. 3917.

CITIZENS NATIONAL BANK *v.* WALTER R. HERMSDORF & a.

390

*Upton, Sanders & Upton* (*Mr. Frederic K. Upton* orally), for the plaintiff.

*Normandin & Normandin* (*Mr. F. A. Normandin* orally), for the defendants.

JOHNSTON, C. J. The interpretation of the letter of April 10, 1945, written by the defendants is a question of law and the construction placed thereon by the Trial Court is reviewable in this court. *Smart v. Hernandez*, 95 N. H. 492, 496, and cases cited.

The language of this written instrument is clear. "We [the defendants] agree to make payment upon delivery of these boxes." Payment was promised "direct to your bank." The letter was addressed to the cashier of the plaintiff bank and promptly delivered to the bank. If there was consideration for the promise by the defendants contained in this letter, then the present action in the name of the plaintiff bank may be maintained.

When on April 10, Mr. Darker asked the defendants for the letter that was written and given him in order that he might establish his credit with the plaintiff bank, and when he immediately delivered the same to the plaintiff and on April 11 was given a loan, he equitably assigned to the plaintiff his right to future payments for the boxes described. *Kent v. Watson*, 46 N. H. 148.

The oral assignment of payments to become due was accepted by the plaintiff. The letter was received and placed in the bank's collateral file. On the first note taken from Mr. Darker thereafter the bank entered in accordance with its practice a notation of the security in question; and in the cash balance book a statement was made that the note was secured by the Hermsdorf order. In the same way various other notes of Mr. Darker were secured. On the back of the renewal note of July 14, he recited over his signature that he had "deposited with the bank as collateral security . . . order . . . Hermsdorf Fixture & Mfg. Co., Manchester, N. H."

The defendants had notice of the assignment through the instructions of Mr. Darker and the writing of the letter given by them to him for delivery. It is immaterial whether the debtor's promise to the assignee is before or after the assignment. *Morse v. Bellows*, 7 N. H. 549, 565.

Our court has held that the assignee's equitable interest in the assignment is a sufficient consideration to sustain the express promise of the obligor. "If, however, the debtor makes a promise to the assignee to pay the debt to him, the assignee may maintain an action in his own name; for the equitable interest obtained by the assignment is a sufficient consideration to sustain an express promise." *Thompson v. Emery*, 27 N. H. 269, 273. See also, *Kent v. Watson, supra; Boyd v. Webster*, 58 N. H. 336.

After Mr. Darker's instructions to the defendants to pay the bank

and their promise at his request to make payments to it, he could not have recovered from them. *Conway* v. *Cutting*, 51 N. H. 407. They were relieved of any such future claim.

That both parties to the contract understood it as above stated is evidenced by their conduct in sending and in receiving the check for $1,531.08 dated May 14, 1945.

Mr. Herbert A. Hermsdorf testified that the letter of April 10 was merely one of recommendation concerning Mr. Darker. The evidence is as follows: "Q. Now, you were writing the bank a letter stating that you would pay for these boxes by forwarding the money directly to the bank? A. That is correct. Q. This letter is far more than a letter of recommendation, is it not? A. I don't think I would be the judge of that. It was certainly not the intention. It may be construed as such. Q. What do you now tell us this letter is a recommendation of? A. Well, as he told me at the time — Q. (Interrupting) I am asking you what the letter is a recommendation of? A. Prestige, to get in with the bank and possibly get help from them at some time. Q. Help from them in what way? A. I don't know. Probably recommendations on their part, as I know many war contracts before they were placed, supplies were checked by their banks or with their banks as to their ability and integrity to perform." The court did not accept this idea that the said letter was merely one of recommendation. Inasmuch as it does not contain one word of who or what Mr. Darker was, this contention cannot be taken seriously.

The Court found that there was no intention on the part of the defendants to enter into a contract with the plaintiff. This is immaterial. An undisclosed intention does not preclude an otherwise legal contract. The standard is the meaning that would be attached to it by a reasonable person in the position of the bank. *Duhaime* v. *Insurance Company*, 86 N. H. 307; Restatement, Contracts, N. H. anno.,s. 230.

There was also a finding by the Court "that the bank was not induced by the letter to make the loans to Darker." This is contrary to other findings such as "the bank continued to make loans to Darker, which according to the notations on its books, were secured by the Hermsdorf order"; and "the bank continued to make loans to Darker, using the defendants' order as security . . . " The following testimony of cashier Smith was uncontradicted: "Now, would the bank have granted any of the Darker loans against which the Hermsdorf order or assurance was allocated as security without that order or assurance as security? A. No." The promise contained in the letter of

April 10 was an acceptance of the assignment by Mr. Darker to the plaintiff of the right to payment for the boxes. This right passed to the plaintiff and remained enforceable in the plaintiff's hands. Its right to recover was not dependent upon proof that the loans to Mr. Darker were made in reliance upon the defendant's letter of April 10.

Since there was a contract in accordance with the terms of said letter of April 10 and 1516 acceptable boxes were delivered to the defendants, they unquestionably became obligated to the plaintiff to pay it the sum of $3,395.92 in addition to the check given the plaintiff on May 14. The fact that this sum was included in the checks for $1,960 and $2,058.40 given by the defendants to Mr. Darker on May 21 and July 25 respectively does not excuse them. In relying upon his fraudulent statement that he was straightened out with the bank, they took a chance of its not being correct. They could readily have learned the truth from the plaintiff.

The damages claimed by the plaintiff are the amounts owed them by Mr. Darker. This is $2,500 with interest from November 29, 1945. This is the amount of the damages contemplated by the parties to the contract evidenced by the letter of April 10. *Dufton* v. *Bank*, 95 N. H. 299.

The plaintiff is entitled to its claim unless it failed to mitigate its damages. The defendants claim that the plaintiff could have avoided the damages or most of them because Mr. Darker had on deposit with it on September 14, when the July note became due $2,704.69, and in October $1,438.98. It is also argued that the plaintiff had other security for its loan, but there is no finding or evidence that this other security had any value when it was needed.

There is no obligation on a promisee to minimize his damages until he actually knows that he is suffering damages because of a breach of contract by the promisor. He may assume that the promisor will keep his contract. "If there was no abandonment of the contract . . . of which plaintiff was notified, he was under no obligation to go in himself, treat the contract as abandoned and attempt to get out this piling and save it from rot and decay." *Cronan* v. *Stutsman*, 168 Mo. App. 46, 53. See also, *Pacific Can Co.* v. *Hewes*, 95 F. (2d) 42, 46; *American Surety Co. of N. Y.* v. *Franciscus*, 127 F. (2d) 810, 816; *Garrett* v. *Winterich*, 44 Ind. App. 322, 330, 331.

The finding that the plaintiff was put on inquiry of the fact that Hermsdorf was making payments directly to Darker before the renewal note of July 14 was made is immaterial so far as the duty to minimize damages is concerned. In *Garrett* v. *Winterich*, *supra*, it

was held that there was no obligation to anticipate what would be done, that the promisee had a right to rely upon the promisor's performing his duty until he knew otherwise.

Before there was any duty on the part of the plaintiff to minimize its damages, the bank would have to know in fact that boxes had been delivered to the defendants by Mr. Darker, that they were under the contract and that the defendants were refusing to pay the plaintiff for them.

There is no evidence that the plaintiff had such knowledge before its letter of February 5, 1946. The defendants never notified the plaintiff after the check of May 14 that they received boxes or that they were paying Mr. Darker for boxes.

Any knowledge would not be that of the bank unless it was knowledge of the directors or an official or employee who had authority to act with respect to the matter. "The general rule is that notice of facts to an agent is constructive notice thereof to the principal himself, where it arises from, or is at the time connected with, the subject-matter of his agency." *Clark* v. *Marshall*, 62 N. H. 498, 500. See also, *Rowe* v. *Company*, 86 N. H. 127. It did not appear that any director or the cashier or the assistant cashier had the requisite knowledge.

The plaintiff was not bound to investigate the notation, "In advance on boxes," placed on the check of May 21 given by the defendants to Mr. Darker and deposited by the latter in the plaintiff bank. "A bank is not bound to take notice of or give heed to notations or memoranda upon checks, made by the drawer for his personal convenience or advantage." 5 Michie, Banks & Banking (Perm. *ed.*) 122. This matter is also discussed by the same author on page 325 of the same volume.

The case of *First National Bank of Duluth* v. *School District*, 173 Minn. 383, is similar to our present case in that it was claimed that the depository bank lost certain rights because it did not give heed to a notation on a deposited check. The bank owned two warrants 157 and 91 of the school district. It received on deposit a check of the district payable to the bank that sold them with the notation, "for warrant 157, 91 and int. school dist. 15." The court said on pages 384, 385: "But we cannot hold, with the defendant, that the notation on the check bound the plaintiff or in any way affected its rights. Such notations on a check, as between drawer and drawee, operate only to serve the convenience of the drawer. . . . It is not arguable even that a memorandum put on a check by the drawer can charge a depository with the payee's misuse of the proceeds."

Other authorities holding that a bank is not bound to take notice of memoranda and figures on the margin of a check are as follows: *State Bank* v. *Dodge*, 124 U. S. 333; *Childs* v. *Empire Trust Co.*, 54 F. (2d) 981; *Duckett* v. *Mechanics' Bank*, 86 Md. 400; *Boston Ins. Co.* v. *Wells Fargo Bank*, 80 Cal. App. (2d) 59; *Valley National Bank* v. *American &c. Ins. Co.*, 60 Ariz. 407; *Brown* v. *Cow Creek Sheep Co.*, 21 Wyo. 1; *Rodgers* v. *Bankers National Bank*, 179 Minn. 197; *Kuraner* v. *Columbia Nat. Bank*, 230 Mo. App. 358; 6 Zollmann, Banks & Banking (Perm. *ed.*) 30, 31.

*Judgment for the plaintiff for $2,500 with interest from November 29, 1945.*

All concurred.