Broadcast Music v. Rindge Lane Corp.  CV-93-460-JD  03/27/95
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Broadcast Music, Inc., et al.

  v.                                          Civil No. 93-460-JD

The Rindge Lane Corp., d/b/a
The Press Room and Jay Smith


O R D E R


The plaintiffs, Broadcast Music, Inc. ("BMI"); Jerome

Richardson, d/b/a Immendise Music Co.; Frederick S. Bienstock;

Hammerstein Music & Theatre Co., Inc.; Dorothy F. Rodgers and

Murray Cohen, as trustees under Dorothy F. Rodgers 1983 Trust

Agreement, d/b/a Edward B. Marks Music Co.; Corcovado Music

Corp.; Storm King Music, Inc.; Pentagon Music Co.; and Siquomb

Publishing Corp.; bring this copyright infringement action

against the defendants, The Rindge Lane Corp., d/b/a The Press

Room, ("Press Room"), and its president, Jay Smith ("Smith"),

pursuant to 17 U.S.C.A. §§ 101 et seq. (West 1977 & Supp. 1994)

("Copyright Act").[1]

_____

[1]The suit alleges infringement of six musical compositions
owned by the plaintiffs.  The musical compositions and their
authors are:  (1) "Groove Merchant" by Jerome Richardson
(plaintiff Jerome Richardson d/b/a Immendise Music Co.); (2) "God
Bless' The Child" by Billie Holiday and Arthur Herzog, Jr.
(plaintiff Dorothy F. Rodgers and Murray Cohen, trustees under
Dorothy F. Rodgers 1983 Trust Agreement, d/b/a Edward B. Marks
Music Co.); (3) "Triste" by Antonio C. Jobim a/k/a Antonio Carlos
Jobim (plaintiff Corcovado Music Corp.); (4) "Deep River Blues"

The plaintiffs seek to enjoin the defendants from future infringement and also request damages, costs, and attorney fees. The court's jurisdiction is based on 28 U.S.C.A. §§ 1331, 1338 (West 1993). Before the court is the plaintiffs' motion for summary judgment (document no. 10).

## Background

Plaintiff BMI is a nonprofit organization which acquires and licenses the nonexclusive public performance rights of certain copyrighted musical compositions ("BMI Music"). Plaintiff's Memorandum of Law in Support of Summary Judgment ("Memorandum in Support of Summary Judgment") at 2. The other plaintiffs own the copyright to the various musical compositions which are the subject of this lawsuit. Id. Under an agreement with these copyright owners, BMI licenses the performance rights to establishments including concert halls, restaurants, nightclubs and hotels. Id.

The defendant Smith owns and operates the Press Room restaurant and nightclub located in Portsmouth, New Hampshire. The Press Room sponsors live performances of music. Defendants'

by A.D. Watson (plaintiff Storm King Music, Inc.); (5) "Both Sides Now" by Joni Mitchell (plaintiff Siquomb Publishing Corp.); and (6) "In Your Eyes" by Peter Gabriel (plaintiff Pentagon Music Co.).

Memorandum of Law in Opposition to Motion for Summary Judgment ("Memorandum in Opposition to Summary Judgment") at 1.

On June 27, 1979, BMI granted the defendants a nonexclusive license to play various musical compositions at the Press Room. Id. at 1-2. The license agreement called for a one-year term with automatic renewal for subsequent one-year terms unless either party cancelled upon thirty days' notice prior to the close of the current term. Id. at Exhibit A, ¶ 3. Pursuant to the agreement, the defendants made license fee payments to BMI until 1984. Id. at 2, Exhibit B. The defendants consistently paid late, but BMI accepted the license fees nonetheless. The defendants did not make any payments during 1985 and 1986. Id. at Exhibit B.

According to a BMI interoffice memo dated January 27, 1987, BMI and the defendants had reached a new, modified license agreement. Under the new agreement, the defendants' account would be current through December 31, 1986, upon payment of a $620 license fee. The defendant paid the fee on April 22, 1987. Id. at 2, Exhibit C. On April 30, 1987, the parties signed a new agreement providing for payment for the license on a calendar year basis. Id.

The new agreement set the initial license term for eight months with automatic renewal for subsequent one-year terms

3

unless either party cancelled with thirty days' notice prior to the close of a term. Id. at Exhibit A, ¶ 2(a). The defendants made annual license fee payments of $300 from 1988 to 1991. Id. at 3.

In 1989 BMI revised its license agreements and increased annual fees. In November 1989, BMI mailed a letter to the defendants explaining the change in terms and indicating that the 1987 agreement would expire and would need to be replaced by a new license agreement. Stevens Affidavit, Exhibit A. The letter and all subsequent correspondance was addressed to "Jay Smith, President," "Jay Smith" or "The Rindge Lane Corp." at "The Press Room, 77 Daniel St., Portsmouth, NH 03801." See Declaration of Lawrence Stevens ("Stevens Affidavit") at 1-2, Exhibits A-L. The defendants have neither admitted nor denied receiving the November 1989 notice. However, in January 1990, BMI accepted the defendants' payment of $300. Memorandum in Opposition to Summary Judgment at 3.

In February 1990, March 1990, and November 1990, BMI sent additional notices addressed to the defendants explaining the need to execute a new license agreement. Stevens Affidavit. In March 1991, the defendants once again made payment of a license fee, this time for $360, which BMI accepted. Memorandum in Opposition to Summary Judgment at 3. The defendants did not

4

submit another payment to BMI until after the commencement of this lawsuit.  Id.

On September 20, 1991, BMI sent a letter to the defendants by regular mail notifiying them that the prior license agreement had expired and that they needed to sign the new agreement or face penalties for copyright infringement.  Stevens Affidavit, Exhibit E.  On September 30, 1991, BMI sent another letter addressed to the defendants, this time by certified mail, stating that the defendants' account was delinquent and, as a result, the 1987 license agreement would be cancelled on October 31, 1991.  Id. at Exhibit J.  The letter was stamped "return to sender" and sent back to BMI.  Memorandum in Opposition to Summary Judgment at 4; Stevens Affidavit, Exhibit J.  BMI finally cancelled the 1987 license agreement on October 31, 1991.  Memorandum in Opposition to Summary Judgment, Exhibit B.

On February 25, 1992, BMI sent the defendants by certified mail a formal notice to cease and desist performance of BMI music.  Stevens Affidavit, Exhibit K.  This letter was also stamped "return to sender" and sent back to BMI.  Memorandum in Opposition to Summary Judgment at 4; Stevens Affidavit, Exhibit K.  On March 2, 1992, September 14, 1992, and October 16, 1992, BMI sent the defendants through regular mail three additional letters regarding the notice of cancellation.  Stevens Affidavit,

Exhibits F, G, H.  Smith maintains that he does not recall receiving the letters, but does not claim that they were returned to BMI like the prior notice sent by certified mail.  See Memorandum in Opposition to Summary Judgment at 11.  On October 2, 1992, BMI sent by certified mail, addressed to the defendants, a second formal notice to cease and desist and, as before, the letter was stamped "return to sender" and sent back to BMI. Stevens Affidavit, Exhibit L.

On December 30, 1992, BMI notified the defendants by overnight letter, delivered by private courier, that the Press Room had unlawfully performed BMI music.  Id. at Exhibit I.  The letter indicated that BMI would seek legal redress if the defendants did not sign the new license agreement within five days.  Id.  No new agreement was signed after this notice.

A BMI representative, Mark Cornaro, personally heard the performance of six BMI compositions played during visits to the Press Room on March 7, 1993, April 15, 1993, and June 3, 1993. Declaration of Mark Cornaro ("Cornaro Affidavit").

BMI filed this lawsuit on behalf of itself and the other plaintiffs on August 23, 1993.  The defendants answered the complaint on October 29, 1993.  On November 30, 1993, the defendants attempted to pay license fees owed for 1991 and 1992.

6

Memorandum in Opposition to Summary Judgment at 3. BMI has refused to accept these payments. Id.


## Discussion

In the motion for summary judgment, the plaintiffs assert that there is no genuine issue of material fact as to the defendants' infringement of their copyrights and that they are entitled to judgment as a matter of law. Memorandum in Support of Summary Judgment at 4-7. The plaintiffs argue that the defendants were not authorized to perform BMI music on the dates of alleged infringement, March 7, 1993, April 15, 1993, and June 3, 1993. Id. at 3.

The defendants object to the motion on the grounds that they were entitled to perform the music under an implied license which existed between the parties. Memorandum in Opposition to Summary Judgment at 1.

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The burden is on the moving party to establish the lack of a genuine, material factual issue, and the court must view the

7

record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (citations omitted). Once the moving party has met its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial[,]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56 (e)), or suffer the "swing of the summary judgment scythe." Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d 1555, 1561 (1st Cir. 1989). "In this context, `genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party, Anderson, 477 U.S. at 248; `material' means that the fact is one `that might affect the outcome of the suit under the governing law.'" United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson, 477 U.S. at 248).

The Copyright Act, 17 U.S.C.A. §§ 101 et seq. (West 1977 & Supp. 1994), protects

> original works of authorship fixed in any tangible
> medium of expression . . . from which they can be
> perceived, reproduced, or otherwise communicated,
> either directly or with the aid of a machine or device.

17 U.S.C.A. § 102(a) (Supp. 1994). Works of authorship include "musical works, including any accompanying words" and "sound recordings." Id. at § 102(a)(2), (7).

8

Under the Copyright Act, copyright owners possess the exclusive rights to authorize a public performance of their musical compositions and the violation of this right constitutes infringement. Id. at §§ 106, 501(a). The legal or beneficial owners of a copyright may protect their interest by bringing a private action for infringement occurring while they are the owner of the copyright. Id. at § 501(b).[2] As a remedy, copyright owners may seek an injunction against future infringement, statutory damages, costs, and attorney fees. Id. at §§ 502, 504(c), 505.

To prevail in a copyright infringement action, the plaintiffs must establish five elements:

> (1) the originality and authorship of the compositions involved;
> (2) compliance with the formalities of the Copyright Act;
> (3) that plaintiffs are the proprietors of the copyrights of the compositions involved;
> (4) that the compositions were performed publicly for profit; and
> (5) that the defendants had not received proper authorization for performance of the compositions.

Merrill v. County Stores, Inc., 669 F. Supp. 1164, 1168 (D.N.H. 1987) (citing Sailor Music v. Mai Kai of Concord, Inc., 640 F. Supp. 629, 632 (D.N.H. 1986)); see Jobete Music Co. v. Massey,

---

[2]Generally, a work must be registered with the Copyright Office before an infringement action may be brought. See 17 U.S.C.A § 411; 2 Melville Nimmer & David Nimmer, Nimmer on Copyright § 7.16[B] (1994).

9

788 F. Supp. 262, 265 (M.D.N.C. 1992) (citing <u>Hulex Music v.</u>

<u>Santy</u>, 698 F. Supp. 1024, 1030 (D.N.H. 1988)); <u>Chi-Boy Music v.</u>

<u>Towne Tavern, Inc.</u>, 779 F. Supp. 527, 529 (N.D. Ala. 1991).


<u>I. Originality and Authorship and Compliance with Copyright</u>

<u>Formalities</u>

The plaintiffs may satisfy the elements of originality and

authorship and compliance with copyright formalities by producing

a certificate of copyright registration, which is prima facie

evidence of the ownership and validity of the copyright.

> In any judicial proceedings the certificate of a
> registration made before or within five years after
> first publication of the work shall constitute prima
> facie evidence of the validity of the copyright and of
> the facts stated in the certificate.

17 U.S.C.A. § 410(c) (West 1977); <u>Sandwiches, Inc. v. Wendy's</u>

<u>Int'l, Inc.</u>, 654 F. Supp. 1066, 1071 (E.D. Wis. 1987); <u>see</u> <u>Chi-</u>

<u>Boy Music</u>, 779 F. Supp. at 529; <u>Sailor Music</u>, 640 F. Supp. at

632. Once the plaintiffs establish a presumption of validity,

the burden shifts to the defendants to rebut the presumption of

proper copyright registration. <u>Hasbro Bradley, Inc. v. Sparkle</u>

<u>Toys, Inc.</u>, 780 F.2d 189, 192 (2d Cir. 1985) (citations omitted);

<u>Knickerbocker Toy Co. v. Winterbrook Corp.</u>, 554 F. Supp. 1309,

1318 (D.N.H. 1982); 3 Nimmer at § 12.11[B]. The defendants may

rebut the presumption by showing, for example, that the

plaintiffs had not registered their musical compositions within five years after first publication or that the plaintiffs had not properly deposited their compositions with the Copyright Office. 3 Nimmer at § 12.11[B]; see 17 U.S.C.A. § 410(c).[3]

In this case the plaintiffs have submitted photocopies of the certificates of copyright registration for the musical compositions at issue. See Declaration of Judith Saffer ("Saffer Affidavit"), Exhibit A. The defendants have not responded with evidence, such as untimely registration or improper deposit with the Copyright Office, to rebut the presumption of copyright ownership and validity, and compliance with the formalities of the Copyright Act. The court finds there are no genuine issues of material fact regarding originality and authorship or copyright compliance and, therefore, the first two elements of copyright infringement have been established as a matter of law.

## II. Proprietorship of Musical Compositions

In cases where the plaintiffs are also the authors of their musical compositions the court may accept the copyright registration statement as prima facie evidence of proprietorship.

_____

[3]Nimmer states that "[t]he case law has yet to settle upon a consistent formulation of what evidence satisfies the defendant's burden." 3 Nimmer at § 12.11[B][2]. Since the defendant has not come forward with evidence to rebut this element, the court need not address the issue.

11

Broadcast Music, Inc. v. Moor-Law, Inc., 484 F. Supp. 357, 363 (D. Del. 1980); see Chi-Boy Music, 779 F. Supp. at 529; Sailor Music, 640 F. Supp. at 632-33; 3 Nimmer at § 12.11[C]. However, where the plaintiffs are assignees of previously registered copyrights, the court requires additional evidence beyond the registration statements to find that the plaintiffs are the proprietors for purposes of satisfying the third element. Moor-Law, 484 F. Supp. at 363; 3 Nimmer at § 12.11[C].

The plaintiffs, with the exception of BMI, have submitted the Saffer Affidavit and copies of their copyright registrations as evidence that they are the proprietors of their respective musical compositions.

> Each of the musical compositions listed on line 2 of Schedule I of Plaintiffs' Complaint was registered with the Copyright Office on the date listed in line 5. A registration certificate bearing the number listed on line 6 was issued by the Copyright Office to the Plaintiff listed on line 4 or predecessor in interest.

Saffer Affidavit at 2. The defendants have not attempted to rebut the affidavit. The court finds that, with the exception of BMI, the plaintiffs are the proprietors of their respective musical compositions.

BMI, as assignee of previously registered copyrights, also relies on the Saffer Affidavit as evidence that it is a proprietor of the compositions.

12

> On the date listed on line 8 of Schedule I, BMI had
> been granted, by the other Plaintiffs, the right to
> publicly perform these compositions and to issue public
> performance license agreements to music users.

Id.[4]  Again, the defendants have not challenged the affidavit nor argued that BMI is not a proprietor of the musical compositions. Thus, the court finds that there is no genuine dispute of material fact relative to the question of proprietorship and, therefore, the plaintiffs have established the third element of copyright infringement as a matter of law.


## III.  Public Performance

The plaintiffs may establish the fourth element of copyright infringement, public performance of the musical compositions for profit, through the submission of sworn affidavits of persons who witnessed the alleged acts of infringement.  Chi-Boy Music, 779 F. Supp. at 530; Sailor Music, 640 F. Supp. at 633.  Furthermore, a "performance at a restaurant to which the public is admitted and where food and beverages are sold is deemed to be given 'publicly for profit.'"  Broadcast Music, Inc. v. Allis, 667 F.

---

[4]The court notes that the reference to Schedule I by Saffer in her affidavit does not list a line 8.  However, the defendants have not challenged the veracity of the affidavit and, by virtue of past license agreements with BMI, have tacitly acknowledged that BMI is a lawful proprietor of the musical compositions.

Supp. 356, 358 (S.D. Miss. 1986) (quotations and citations omitted).

The plaintiffs assert they sent a BMI representative, Mark Cornaro, to the Press Room on March 7, 1993, April 15, 1993, and June 3, 1993, to determine if the defendants were performing BMI music. Stevens Affidavit at 2-3. According to his affidavit, Cornaro is familiar with the BMI repertoire and, based on this familiarity, recognized the performance of BMI music during his visits. Cornaro Affidavit at 1.

The performances at issue are considered to have been "for profit" in that the defendants acknowledge the Press Room serves food and liquor and, at times, collects a cover charge from patrons. See Memorandum in Opposition to Summary Judgment, Exhibit E. The defendants do not dispute that Cornaro attended the Press Room on the dates of the alleged infringement. Likewise, the defendants have not submitted evidence that would call into question the veracity of Cornaro's affidavit. The court finds that there is no genuine dispute of material fact relative to the public performance of BMI music for profit and, therefore, the plaintiffs have satisfied the fourth element of copyright infringement as a matter of law.

## IV. Unauthorized Performance

To satisfy the fifth element of copyright infringement, a plaintiff must demonstrate that the defendant lacked authority to perform publicly the musical compositions at issue on the date of the alleged infringement. Sailor Music, 640 F. Supp. at 632. Authorization to perform publicly a musical composition may be granted contractually through a license agreement. See Chi-Boy Music, 779 F. Supp. at 529 (ASCAP licensed public performance of copyrighted music); Broadcast Music, Inc. v. Pine Belt Inv. Developers, Inc., 657 F. Supp. 1016, 1019 (S.D. Miss. 1987) ("BMI licenses the performance of such copyrighted musical compositions . . . primarily by means of a blanket license agreement"); Sailor Music, 640 F. Supp. at 631-32 (defendant sought license agreement to perform live music at restaurant).

In support of their motion, the plaintiffs allege that the public performance at the Press Room was not authorized because they had cancelled the license agreement and had placed the defendants on written notice of the cancellation pursuant to the procedure outlined in the 1987 agreement. Memorandum in Support of Summary Judgment at 6. They argue that the BMI letters are presumed to have been received by the defendants. Plaintiffs' Memorandum of Law in Reply to Opposition to Summary Judgment ("Plaintiffs' Reply Memorandum") at 5. The plaintiffs further

15

argue that there was never an implied license under which the defendant was entitled to perform BMI music. Memorandum in Support of Summary Judgment at 6.

The defendants respond that summary judgment is inappropriate because there is a genuine dispute as to whether they were authorized to perform the compositions. Memorandum in Opposition to Summary Judgment at 7-11. They argue that they were never placed on actual notice of the cancellation of the agreement and that the mere dispatch of the renewal and cancellation letters by BMI does not give rise to a presumption of receipt of those letters. Id. at 11-12. Instead, the defendants claim that they were entitled to perform the BMI-licensed music under a valid, implied contract. Id. at 1.


A.  Presumption of Receipt of Letters

The plaintiffs argue that the defendants are presumed to have received any letters BMI sent through regular mail to the Press Room's business address. Memorandum in Support of Summary Judgment at 6; Plaintiffs' Reply Memorandum at 5. By contrast, defendant Smith denies personally receiving any mailed notices sent by BMI relative to the cancellation of the 1987 license agreement. Memorandum in Opposition to Summary Judgement at 11.

16

Neither party has cited authority in support of their respective positions.

The court applies federal evidentiary principles where federal law, such as the Copyright Act, provides the rule of decision. See Fed. R. Evid. 302. "[M]ailing gives rise to [a] presumption that [a] document mailed 'reached its destination at the regular time and was received by the [addressee].'" U.S. Fire Ins. Co. v. Productions Padosa, Inc., 835 F.2d. 950, 952 n.2 (1st Cir. 1987) (citing Rosenthal v. Walker, 111 U.S. 185 (1884)). "Proof that a letter properly directed was placed in a U.S. post office mail receptacle creates a presumption that it reached its destination in the usual time and was actually received by the person to whom it was addressed." Beck v. Somerset Technologies, Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Hagner v. United States, 285 U.S. 427 (1932)); see Jones v. Citibank, Fed. Sav. Bank, 844 F. Supp. 437 (N.D. Ill. 1994). However, the presumption is rebuttable and once the plaintiffs have offered evidence of mailing the documents in question the burden shifts to the defendants to produce evidence of non-delivery. See Beck, 882 F.2d at 996 (testimony that employee did not "recall" or "remember" receiving letter is insufficient to rebut presumption of receipt).

17

Although the evidentiary presumption of receipt is governed by federal law, the court relies on the common law of agency and principal to determine who is legally held to have received notice on behalf of an employer.  Aymes v. Bonelli, 980 F.2d 857, 860-61 (2d Cir. 1992) (citing Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751 (1989)).  In New Hampshire, mail received by an employee has the same legal effect as that received directly by the employer under the common law rule that "notice of facts to an agent is constructive notice thereof to the principal himself, where it arises from or is at the time connected with, the subject-matter of his agency." Citizens Nat'l Bank v. Hermsdorf, 96 N.H. 389, 395, 77 A.2d 862, 867 (1951) (quotations omitted).  Likewise, "[s]ince a corporation can act only through its officers, agents and employees, it is necessarily chargeable with the knowledge of its officers and agents acting within the scope of their authority."  Sutton Mut. Ins. Co. v. Notre Dame Arena, 108 N.H. 437, 441, 237 A.2d 676, 679 (1968), (citing Sawyer v. Mid-Continent Petroleum Corp., 236 F.2d 518, 520 (10th Cir. 1956)).

The plaintiffs allege they properly notified (i.e., in writing) the defendants in accordance with the cancellation procedure outlined in the 1987 agreement.  Affidavits filed in support of their motion indicate that BMI sent eight letters by

18

regular mail regarding either renewal or cancellation of the licensing agreement. Stevens Affidavit at 2. Furthermore, BMI also dispatched cancellation notices by certified mail. Id. at 1-2. Each mailing was properly addressed to "Jay Smith, President," "Jay Smith" or "The Rindge Lane Corp." at "The Press Room, 77 Daniel St., Portsmouth, NH 03801." See id. at 1, Exhibits A-J; Memorandum in Opposition to Summary Judgment at 1, Exhibit E. This evidence satisfies the presumption of receipt, at least with respect to notices sent by regular mail.[5]

The defendants attempt to rebut the presumption by arguing that the certified letters could not have been received because they were marked "return to sender" and sent back to BMI. Memorandum in Opposition to Summary Judgment at 4; Saffer Affidavit, Exhibit B. The defendants have also submitted an affidavit in which Smith testified that he did not "recall" receiving any notice of cancellation. Smith Affidavit at ¶ 13.

---

[5]In his affidavit, Stevens testifies that he "wrote to" and "sent" the letters by both regular and certified mail to the Press Room at "77 Daniel Street, Portsmouth, New Hampshire 03801." Stevens Affidavit at 1-2. Stevens does not explicitly state that the letters were properly deposited in a "U.S. post office mail receptacle" or otherwise properly submitted to the postal service. See id. However, the defendants do not challenge the adequacy of the dispatch of letters, but rather focus on the inadequacy of the Press Room's mail handling procedures. The court finds that there is no genuine dispute that BMI satisfied the mailing requirement for the purpose of invoking the evidentiary presumption.

19

Smith further testified that mail sent to the Press Room is often not received by him in a timely manner, if at all, and, therefore, he has instructed the staff not to sign for or accept any certified mail.  Id. at ¶¶ 14-15.

The defendants' argument is unavailing as the evidence is insufficient to rebut the presumption of receipt.  Although the refusal of certified mail may show that the defendants did not receive those letters, it does not rebut the presumption that they received the letters dispatched by regular first-class mail, namely the six other renewal and cancellation notices and the two cease and desist notices.  Moreover, although the defendants' evidence indicates that Smith personally may not receive mail in a timely manner, there is no evidence that the Press Room, through its employees, does not receive it as delivered.[6]

The defendants cannot reasonably expect to overcome the presumption of receipt by claiming that irresponsible employees, predominantly evening hours of operation and company policy have effectively shielded management from ten or more written communications from BMI.  In any event, even if Smith himself does not "recall" receipt of notices, he nonetheless is held to

---

[6]The defendants maintain that employees are instructed not to accept certified mail.  However, there is no evidence in the record to suggest that there is a similar policy with respect to regular mail.

constructive receipt and knowledge of materials received by his employees through operation of common law principles of agency and principal. Given the absence of adequate evidence to rebut the presumption of the receipt of regular mail, the court finds that the defendants were properly placed on notice of BMI's cancellation of the agreement.

### B. The Implied Contract

The court next considers the argument that the course of conduct between the parties created an implied contract which authorized the performance of BMI music. Memorandum in Opposition to Summary Judgment at 7. Specifically, the defendants argue that BMI's past willingness to accept late payment of fees gave rise to an implied license. Id. at 8. In their motion, the plaintiffs assert that they only accepted late payments to credit the defendants' delinquent account under the old agreement. Plaintiffs' Reply Memorandum at 2-3.

A nonexclusive license to perform a copyrighted work may be granted orally or may be implied from the conduct of the parties. MacLean Assoc., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc., 952 F.2d 769, 778-79 (3d Cir. 1991); 3 Nimmer at § 10.02[B][5]. However, a nonexclusive license is revocable absent considera-

21

tion.  <u>Avtec Sys., Inc. v. Peiffer</u>, 21 F.3d 568, 574 n.12 (4th Cir. 1994); 3 Nimmer at § 10.02[B][5].

The interpretation of a contract, either express or implied, is governed by common law.  <u>See, e.g.</u>, <u>Dolch v. United California Bank</u>, 702 F.2d 178, 180 (9th Cir. 1983).  Under New Hampshire law, an implied contract is treated as an implied-in-fact contract.  <u>Morgenroth & Assoc. v. Town of Tilton</u>, 121 N.H. 511, 516, 431 A.2d 770, 773 (1981), <u>appeal after remand</u>, 126 N.H. 266, 490 A.2d 784 (1985).  An implied-in-fact contract is a true contract that is not expressed in words but, rather, is inferred from the conduct of the parties.  <u>Id.</u>, 121 N.H at 514; 431 A.2d at 772; <u>see</u> <u>Goodwin R.R. Inc. v. State</u>, 128 N.H. 595, 604, 517 A.2d 823, 829 (1986).  In addition, the terms of a written contract may be modified by an implied mutual agreement between the parties.  <u>Guri v. Guri</u>, 122 N.H. 552, 555, 448 A.2d 370, 371 (1982).  Therefore, part of a contract may be modified by the conduct of the parties, while the remaining terms are not revised and stay in force as originally written.  <u>See</u> <u>Morgenroth & Assocs.</u>, 121 N.H. at 515, 431 A.2d at 773.

The defendants assert that the written agreement with BMI has been modified by an implied agreement permitting delinquent payment without repercussion.  Memorandum in Opposition to Summary Judgment at 10.  In essence, the defendants argue that at

22

the time of the alleged infringement they were protected by a new, implied-in-fact agreement that would not expire regardless of late payment. See id. In support of this view of the contract, the defendants point to two occasions following the 1989 cancellation notice where they were permitted to pay late without an apparent lapse in the license. Id. at 8, Exhibit B. The defendants' argument is that the payments accepted after the 1989 cancellation notice not only changed the provisions related to timeliness of payment, but also superseded the written provisions regarding BMI's ability to cancel. See Smith Affidavit at ¶¶ 9-11. Finally, the defendants have submitted evidence of an attempted payment on November 30, 1993, which BMI refused. Id. at ¶ 17.

The plaintiffs have submitted evidence showing that the initial, November 29, 1989, renewal and cancellation notice was a prospective cancellation in that it informed the defendants that the 1987 agreement would be cancelled in the near future and would need to be replaced by a new agreement. Stevens Affidavit, Exhibit A; Plaintiffs' Reply Memorandum at 2. The plaintiffs have also submitted evidence that they accepted the late payments to credit the defendants' delinquent account and did not accept any payments after March 21, 1991, including the late payment

23

attempted after the commencement of this lawsuit. Plaintiffs' Reply Memorandum at 3.

In his affidavit Smith testifies that the late payments created an entirely new contract rather than merely changing the payment terms under the 1987 written agreement. Smith Affidavit at ¶ 9. The court finds that the defendants' evidence reveals a dispute of fact relative to whether the conduct of the parties revised the <u>payment</u> terms from those specified in the 1987 written contract. However, the defendants have not submitted evidence to suggest that the <u>cancellation</u> terms of the 1987 agreement were ever revised by an implied mutual agreement. The late payments by Smith may have modified the timeliness of payment terms, however, the remainder of the terms, including the cancellation terms, remained in force. Smith's bald statement that the conduct of the parties created a new implied-in-fact contract is not evidence of the creation of a new agreement. <u>See</u> <u>Velazquez v. Chardon</u>, 736 F.2d 831, 833-34 (1st Cir. 1984) ("The court is not obliged to find that a genuine issue of material fact exists where the only evidence of such an issue is a series of conclusory statements unsupported by specific factual allegations").

There is no genuine dispute that at all times the 1987 agreement called for one-year renewals unless cancelled by either

24

party within thirty-days of the end of a period. The court has already determined that the defendants were properly placed on notice of cancellation under this provision. Thus, on the dates of the alleged infringement the defendants lacked authority to perform the BMI music compositions at issue. Therefore, the final element of copyright infringement is satisfied as a matter of law.

<u>Copyright Infringement Relief</u>

The plaintiffs have requested injunctive relief, statutory damages, post-judgment interest and reasonable attorney's fees and costs. The defendants have briefed the issue of remedies in their responsive pleadings. Courts routinely award statutory damages or injunctive relief when granting a motion for summary judgment on copyright infringement. <u>See, e.g.</u>, <u>Chi-Boy Music</u>, 779 F. Supp. at 532; <u>Hulex Music</u>, 698 F. Supp. at 1031-32; <u>Merrill</u>, 669 F. Supp. at 1171-72; <u>Sailor Music</u>, 640 F. Supp. at 634.

I.  <u>Injunctive Relief</u>

The plaintiffs have requested the court to permanently enjoin the defendants from infringing on their copyrights in the future. Motion at 1.

25

Under the Copyright Act,

> [a]ny court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

17 U.S.C.A. § 502(a) (West 1977).  Courts generally grant permanent injunctions where liability is clear and the defendants present a continuing threat to the copyright.  <u>Pedrosillo Music Corp. v. Radio Musical, Inc.</u>, 815 F. Supp. 511, 516 (D.P.R. 1993)(listing cases); <u>Merrill</u>, 669 F. Supp at 1171 (injunction granted where "substantial likelihood of further infringement of plaintiffs' copyrights exists") (quoting <u>Sailor Music</u>, 640 F. Supp. at 634; <u>Milene Music</u>, 551 F. Supp. at 1295).

The defendants have objected to an injunction, arguing that there is little likelihood of a future infringement:

> Mr. Smith will be licensed for performances of the works to which BMI holds the copyright for 1994 and years forward.  Once so licensed, there will be no violation of copyright.

Memorandum in Opposition to Summary Judgment at 14; <u>see</u> Smith Affidavit at ¶ 17.  Based on these representations by counsel and the affidavit by Smith, the court concludes that there is not a substantial likelihood of a future violation of the plaintiffs' rights and an injunction is not necessary.

## II. Statutory Damages and Judgment Interest

The plaintiffs have requested statutory damages in the amount of $2,000 per violation, for a total of $12,000. Motion at 2-3. The defendants have not responded with a precise calculation of damages, instead arguing that a "$500 minimum award is more appropriate." Memorandum in Opposition to Summary Judgment at 17.

Under the Copyright Act,

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $500 or more than $20,000 as the court considers just.

17 U.S.C.A § 504(c)(1) (West 1977 & Supp. 1994). The Copyright Act further provides that the court may, at its discretion, exceed the maximum statutory damage upon finding a willful violation and, conversely, reduce the damages below the minimum upon finding an unknowing or innocent violation.[7] Id. at § 504(c)(2).

---

[7]Under the law of this circuit, the court may award statutory damages without submitting the matter to a jury. PGP Music v. Davric Maine Corp., 623 F. Supp. 472, 472-73 (D. Me. 1985) (copyright infringer has no right to jury trial on question of injunctive relief and statutory damages) (citing Chappell & Co., Inc. v. Palermo Cafe Co., 249 F.2d 77, 79 (1st Cir. 1957)). But see Video Views, Inc. v. Studio 21, Ltd., 925 F.2d 1010, 1016 (7th Cir. 1991) (statutory damages may only be awarded by jury).

The damages provisions are designed to deter and discourage wrongful conduct. Merrill, 669 F. Supp. at 1171 (citing F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 233, clarification denied, 350 U.S. 810 (1952)). Determination of the amount of an award under the statute is left to the court's sound discretion. Hulex Music, 698 F. Supp. at 1031 (citing Morle Music Co. v. Dick Stacey's Plaza Motel, Inc., 725 F.2d 1, 2-3 (1st Cir. 1983); Merrill, 669 F. Supp. at 1171. In calculating damages the court considers the plaintiffs' lost revenues, expenses saved and profits reaped by the defendants as a result of the infringement, the size of the defendants' operation, and whether the defendants' conduct was intentional or accidental. Merrill, 669 F. Supp. at 1171 (citing Sailor Music, 640 F. Supp. at 635); see Pedrosillo Music, 815 F. Supp. at 517. Moreover, a copyright infringer "cannot expect to pay the same price in damages as it might have paid after freely negotiated bargaining, or there would be no reason to scrupulously obey the copyright law." Merrill, 669 F. Supp. at 1171-72 (quoting Ackee Music, Inc. v. Williams, 650 F. Supp. 653, 657 (D. Kan. 1986)).

The plaintiffs argue that the infringement was deliberate, as evidenced by the defendants' failure to respond to BMI's multiple attempts to execute a new license agreement. Memorandum in Support of Summary Judgment at 12. The defendants argue that

28

the infringement was innocent and was "simply the by-product of erratic bookkeeping procedures or the lack of financial wherewithal to make current payments."  Memorandum in Opposition to Summary Judgment at 15.

The court finds that the infringement was neither willful nor innocent and, thus, calculates damages within the statutory range.  However, the infringement was a knowing violation in the sense that the defendants were repeatedly placed on notice of their conduct and the potential ramifications.  Thus, the court awards the plaintiffs damages in the amount of $800 per violation, for a total award of $4,800.

The court believes this award reflects the nature of the infringement, the need to deter future violations and the degree of culpability of the defendants.  The court further awards the plaintiffs post-judgment interest to be calculated at the federal interest rate as provided by 28 U.S.C.A. § 1961 (West 1994). Clifford v. M/V Islander, 882 F.2d 12, 14 (1st Cir. 1989) (award of post-judgment interest is mandatory); see Cordero v. De Jesus-Mendez, 922 F.2d 11, 15-16 (1st Cir. 1990) (entitlement of post-judgment interest on final judgment).

29

III. Attorney's Fees and Costs

The plaintiffs have requested an award of their reasonable attorney's fees and costs.  Motion at 2.  The defendants object on the grounds that they pursued litigation in good faith and under the honest belief that they had not infringed the plaintiffs' rights.  Memorandum in Opposition to Summary Judgment at 17-18.

The Copyright Act provides that the court "in its discretion may allow the recovery of full costs by or against any party other than the United States . . . [and] a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C.A. § 505 (West 1977).  Courts routinely award fees and costs to prevailing plaintiffs because they would not have had to bring an action but for the defendants' failure to maintaining proper licensing.  See, e.g., Hulex Music, 698 F. Supp. at 1032 (citing Sailor Music, 640 F. Supp. at 636); Merrill, 669 F. Supp. at 1172; Rare Blue Music v. Guttadauro, 616 F. Supp 1528, 1531 (D. Mass. 1985).

The court finds that an award of fees and costs is warranted.  The plaintiffs have submitted an affidavit from local counsel along with bills indicating attorney fees and other fees and costs in the total amount of $2,612.10.  The defendants have not objected to the reasonableness of this figure.  However, the

court notes that while the submitted bills describe in narrative form the work accomplished, they do not offer a breakdown of who performed which tasks and on what day. Disbursements, such as photocopies and telephone charges, are similarly lumped together without indication of how costs are allocated. Finally, the court cannot gauge the reasonableness of a given billable rate or time spent on a task without a brief sketch of the professional qualifications of each billing individual.

The plaintiffs' counsel is ordered to file within ten days of the date of this order an itemized bill which responds to the court's concerns. Counsel is further ordered to submit another affidavit, this time personally signed by the attorney making the sworn statements. The defendants will then be given an opportunity to respond to the plaintiffs' claim for fees and costs as provided by federal and local rules.

## Conclusion

The plaintiffs have satisfied the necessary elements of copyright infringement to prevail under the Copyright Act. The court grants the motion for summary judgment (document no. 10) with respect to question of liability for copyright infringement. The court denies the plaintiffs' request for an injunction. The court awards the plaintiffs $800 for each of the six instances of

31

copyright infringement, for a total of $4,800 with post-judgment interest allowed as provided by 28 U.S.C.A. § 1961. The court orders the plaintiffs to re-submit their claim for fees and costs in a manner consistent with this order within ten days.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

Marcg 27, 1995

cc:   Steven J. Grossman, Esquire
      Thomas M. Dudley, Esquire
      Lawrence M. Edelman, Esquire