**BROADCAST MUSIC, INC.; ARC Music Corp.; Irving Music, Inc., Pronto Music, a Division of Cotilion Music, Inc.; Stone Agate Music, Division of Jobete Music Co., Inc.; Screen Gems–EMI Music, Inc.; Abkco Music, Inc.; S.K. Music, L.P. and Fujipacific Music (USA), Inc.; a Joint Venture Known as "Windswept Pacific Entertainment Co. and d/b/a House of Bryant Publications; Jondora Music; Pri Songs, Inc., Plaintiffs,**

v.

**JEEP SALES & SERVICE CO., d/b/a Haynes Jeep, Stuart Haynes, Jr., individually, and Richard Carter, individually, Defendants.**

Civ. A. No. 3:90CV00432.

United States District Court,
E.D. Virginia,
Richmond Division.

Oct. 18, 1990.

William H. Crispin, Verner, Liipfert, Bernhard, McPherson & Hand, Washington, D.C., for plaintiffs.

William Stephen Coleman, Dominick Jack Esposito, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on plaintiffs' motion for summary judgment pursuant to Fed.R.Civ.P. 56. The matter has been fully briefed and is ripe for disposition. Jurisdiction is based on 28 U.S.C. § 1338(a).

*Background*

Plaintiffs are suing defendants for copyright infringement under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq.* Broadcast Music, Inc. ("BMI"), one of the plaintiffs, is a corporation which has been granted the authority to license the public performance rights to approximately one and one-half million musical compositions, allegedly including those which have been infringed. The other plaintiffs claim that they are the owners of the copyrights in the musical compositions which are the subject of this lawsuit. Defendant Jeep Sales & Service Co. is a corporation which owns and operates Haynes Jeep. The remaining defendants, Stuart Haynes, Jr. and Richard Carter, are officers of Jeep Sales & Service Co.

Plaintiffs allege that in connection with the operation of their business, defendant Jeep Sales & Service Co. publicly performed, or caused to be publicly performed, musical compositions without the consent of the holders of the copyright to these compositions, specifically the plaintiffs. Plaintiffs provide the affidavit of one Philip E. Neff, an employee of BMI, who states that on December 22, 1989 he visited Haynes Jeep. While there he made a written report and recording of the musical compositions which he states were performed by radio station WVGO–FM over at least four speakers recessed in the ceiling of the business and at least four public address horns mounted on light poles outside between 4:50 and 8:01 p.m.

Plaintiffs also provide the affidavit of Judith M. Saffer, Assistant General Counsel of BMI, who states that the individual plaintiffs own the copyrights to the musical compositions in question, and that BMI has been granted the right to issue public performance license agreements.

Lawrence Stevens, the Regional Director of Licensing for BMI, has provided an affidavit in which he states that when BMI learned that Haynes Jeep was performing recorded music without a license, BMI contacted defendants multiple times and advised them that a license was required. Nevertheless Haynes Jeep failed to obtain a license.

Plaintiffs contend that defendants' conduct has caused them to suffer "great and incalculable" damages. Therefore they seek injunctive relief pursuant to 17 U.S.C. § 502(a), as well as statutory damages pursuant to 17 U.S.C. § 504(c)(1), and attorney's fees and costs pursuant to 17 U.S.C. § 505.

*Discussion*

Defendants' first response to this motion is to raise a potential factual dispute. They allege that plaintiffs have not adequately proven their ownership of the copyright to the compositions in question, nor

the proper registration of the compositions with the Copyright Office.

■ Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As stated above, defendants point out only one such potential dispute: whether the plaintiffs hold valid copyrights to the musical compositions in question. This fact, however, was asserted in an affidavit, upon personal knowledge, by Judith M. Saffer, Assistant General Counsel of BMI, who also stated that BMI has been granted by these plaintiffs the right to issue public performance license agreements. Rule 56 provides that when a motion for summary judgment is supported by affidavits made on personal knowledge, setting forth facts which would be admissible in evidence and as to which the affiant is competent to testify, an adverse party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.* Defendants have made no such showing. They have merely alleged that plaintiffs haven't properly proven their status as copyright holders. These are not the "specific facts" required by Rule 56(c). Because there is no material factual dispute, this Court may determine which party is entitled to judgment as a matter of law.

In order to prevail in an action for copyright infringement, a plaintiff must establish the following five elements: (1) originality and authorship of the copyrighted works involved; (2) compliance with the formalities of the Copyright Act; (3) proprietary rights in the copyrighted works involved; (4) public performance of the compositions involved; and (5) lack of authorization for the public performance. *Broadcast Music, Inc. v. Allen–Genoa Rd. Drive–In, Inc.,* 598 F.Supp. 415 (S.D.Tex. 1983); *Boz Scaggs Music v. KND Corp.,* 491 F.Supp. 908, 912 (D.Conn.1980); *Shapi-ro, Bernstein & Co. v. The Log Cabin Club. Assoc.,* 365 F.Supp. 325, 328 n. 4 (N.D.W.Va.1973). Four of these elements are undisputed. The first three have been established by the affidavit of BMI Assistant General Counsel Judith M. Saffer. The last has been established by the affidavit of BMI Regional Director, Lawrence E. Stevens who notes that defendants declined to enter into a license agreement with BMI. The focus of defendants' argument in opposition to summary judgment is the fourth element, public performance.

■ The term "perform" is defined in the Copyright Act as "to recite, render, play, dance or act ... either directly or by means of any device or process...." 17 U.S.C. § 101. To perform or display a work "publicly" within the definition of the Act means

(1) to perform or display it at a place open to the public or at any place where a substantial number of persons outside of any normal circle of a family and its social acquaintance is gathered; or (2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.

*Id.*

The undisputed facts established by the affidavit of Philip E. Neff, are that on December 22, 1989, seventeen songs, including "Happy Happy Birthday Baby," "I Get Around," "I Thank You," "It's the Same Old Song," "Groovy Kind of Love" and "Bring it on Home to Me" were played at Haynes Jeep by radio over at least four recessed ceiling speakers and at least four public address horns mounted on light poles outside of Haynes Jeep, between 4:50 and 8:01 p.m. This is undoubtedly a "public performance" within the scope of the Copyright Act. When the House Commentary on the 1976 version of the Act attempted to clarify the meaning of "perform

the copyrighted work publicly" it stated that

> a singer is performing when he or she sings a song; a broadcasting network is performing when it transmits his or her performance (whether simultaneously or from records ... and *any individual is performing whenever he or she* plays a phonorecord embodying the performance or *communicates the performance by turning on a receiving set.*

H.R.Rep. No. 1476, 94th Cong., 2d Sess. 64, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5677–78 (emphasis added). The defendant Haynes Jeep clearly falls within this definition, as it communicated the performance of the musical compositions on radio station WVGO–FM. Moreover, there can be no doubt that this performance was "public" as it was transmitted by at least four speakers within Haynes Jeep and at least four outside of Haynes Jeep. *See Columbia Pictures Industries v. Redd Horne,* 749 F.2d 154, 158–59 (3d Cir.1984) (exhibition of copyrighted movie in private booths within video store constitutes public performance); *Sailor Music v. Gap Stores, Inc.,* 668 F.2d 84, 86 (2d Cir.1981) (transmission of radio music programs throughout clothing store by means of radio receivers connected to loudspeakers recessed in ceilings is public performance).

■ Nevertheless, defendants contend that they fall within the statutory exemption for small businesses. The exemption, 17 U.S.C. § 110(5), applies to any "communication of a transmission embodying a performance or display of a work by the public reception of the transmission on a single receiving apparatus of the kind commonly used in private homes, unless ... the transmission thus received is further transmitted to the public...." The House Committee which drafted this exemption explained that it was intended to accommodate situations such as that in *Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 95 S.Ct. 2040, 45 L.Ed.2d 84 (1975). In *Aiken,* the Supreme Court determined under the Copyright Act of 1909 that a fast food restaurant did not violate the copyright laws by playing a radio station to entertain its customers. The restaurant had only 620 square feet open to the public, and the broadcasting system consisted "of a home receiver with four ordinary loudspeakers grouped within a relatively narrow circumference from the set...." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 87, *reprinted in* 1976 U.S.Code Cong. & Admin. News, 5659, 5701. The Committee pointed out that the operation "was not of sufficient size to justify, as a practical matter, a subscription to a commercial background music service.... However, where the public communication was by means of something other than a home-type receiving apparatus ... the exemption would not apply." H.R. Conf.Rep. No. 1733, 94th Cong., 2d Sess. 75, *reprinted in* 1976 U.S.Code Cong. & Admin.News, 5810, 5816.

The committee went on to state that the facts of the *Aiken* case "represent the outer limit of the exemption ... and the line should be drawn at that point." H.R. Rep. No. 1476, *supra,* 1976 U.S.Code Cong. & Admin. News, at 5701. This limitation has been strictly construed. Courts have been unwilling to apply the exemption where the physical size of the public space in which communication of the copyrighted material occurred is larger than that in *Aiken* or where the receiver used had features and power typical of a commercial receiver. *See, e.g., International Korwin Corp. v. Kowalczyk,* 665 F.Supp. 652 (N.D. Ill.1987), *aff'd* 855 F.2d 375 (7th Cir.1988); *Broadcast Music, Inc. v. United States Shoe Corp.,* 211 U.S.P.Q. 43, 1980 WL 1178 (C.D.Cal.1980), *aff'd,* 678 F.2d 816 (9th Cir. 1982); *Sailor Music v. Gap Stores, Inc.,* 668 F.2d 84, 85–86 (2d Cir.1981); *but see Springsteen v. Plaza Roller Dome, Inc.,* 602 F.Supp. 1113, 1117 (M.D.N.C.1985) (size of alleged offending facility and number of speakers not, standing alone, the sole or even predominant factors to consider). Within this framework, the actions of Haynes Jeep must be said to exceed the "outer limit" of the exemption. Unlike *Aiken,* Haynes Jeep utilized public address horns mounted outside of their office, in addition to the speakers within the office. This Court is satisfied that this type of

public dissemination of the copyrighted material is not of the type that Congress intended to exempt from the copyright laws.

### The Requested Relief

 As for the relief requested, plaintiff has elected to receive statutory damages, in lieu of an award representing actual damages and defendant's profits. Under 17 U.S.C. § 504(c)(1) this Court may award statutory damages between $500 and $20,000. If the infringer proves that he or she was "unaware and had no reason to believe that his or her acts constituted an infringement of a copyright" the Court may award a minimum of $100 per infringement. 17 U.S.C. § 504(c)(2). Having considered the nature of the infringement and defendants' repeated failure to respond to the warnings by plaintiff, this Court shall award damages in the amount of $500 for each of the seventeen proven copyright infringements.[1] Furthermore, pursuant to 17 U.S.C. § 502(a), defendants shall be enjoined from further rendering of any public performances by means of radio broadcasts over loudspeakers which would infringe upon plaintiff's copyrighted musical composition. Finally, plaintiff's attorney states by affidavit that the costs and expenses of this action are $425.26 and that plaintiff's attorney's fees are $831.25. The Court will award these amounts as provided in § 505 of the Copyright Act.

An appropriate Order shall issue.

### ORDER

For the reasons stated in the Memorandum this day filed and deeming it proper so to do, it is ADJUDGED AND ORDERED that plaintiffs' motion for summary judgment be, and the same is hereby GRANTED.

Plaintiffs shall recover of the defendants the sum of eight thousand five hundred dollars ($8,500.00) with interest from this date at the rate of 7.78 percent per annum, its taxable costs, attorneys' fees of $831.25, and additional expenses in the amount of $425.26, for a total recovery of nine thousand, seven hundred fifty six dollars and fifty-one cents ($9,756.51).

Defendants, their agents, servants and employees all acting in concert thereof be and they are hereby permanently enjoined from the rendering of any public performances by means of radio broadcast or otherwise which would infringe upon the plaintiffs' copyrighted musical compositions.

---

1. Defendants correctly point out that their liability is joint and several. *Columbia Pictures Industries v. Redd Horne,* 749 F.2d 154, 160 (3d Cir.1984) (liability of officer or director of corporation is joint and several with corporate defendant); *Samet & Wells, Inc. v. Shalom Toy Co.,* 429 F.Supp. 895, 903–04 (E.D.N.Y.1977), *aff'd,* 578 F.2d 1369 (2d Cir.1978).

Although the individual defendants do not appear to contest their liability as corporate officers, it should be noted that " 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing activity of another, may be held liable as a "contributory" infringer' " *Columbia Pictures Industries v. Redd Horne,* 749 F.2d 154, 160 (3d Cir.1984), *quoting Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971) (interpreting the equivalent section under the Copyright Act of 1909). In the case of a corporate officer or director, most courts have interpreted this to require that the corporate officer have " 'the right and ability to supervise the infringing activity', and ... 'a direct financial interest in such activities.' " *Broadcast Music, Inc. v. The Peppermint Club, Inc.,* 229 U.S.P.Q. 534, 538, 1985 WL 6141 (N.D.Ohio 1986), *quoting Warner Bros., Inc. v. Lobster Pot, Inc.,* 582 F.Supp. 478, 483 (N.D.Ohio 1984). In their Answer, defendants Stuart Haynes, Jr. and Richard Carter admit to having "the right and ability to supervise the activities of Defendant Jeep Sales & Service Co. and a direct financial interest in that corporation." *Defendants' Answer* at 2. Consequently, defendants Haynes and Carter are jointly and severally liable with the corporation Jeep Sales and Service for the copyright infringement.