**CHI–BOY MUSIC, Heavy Nova Music, Music Sales Corp., Deborah Ann Gibson d/b/a Deborah Ann's Music and Milene Music, Inc., Plaintiffs,**

v.

**TOWNE TAVERN, INC. and Lindell Bates, Defendants.**

**No. CV–90–H–2296–E.**

United States District Court, N.D. Alabama, E.D.

July 22, 1991.

James W. Gewin, Jane Ellen Schaefer, Bradley Arant Rose & White, Birmingham, Ala., for plaintiffs.

Donald W. Lang, Sylacauga, Ala., for defendants.

## MEMORANDUM OF DECISION

HANCOCK, District Judge.

The court has before it the motion for summary judgment filed by plaintiffs on May 21, 1991. Pursuant to the court's

order of May 29, 1991, the motion was deemed submitted, without oral argument, for decision as of June 25, 1991. For reasons set forth more fully below, the court concludes that plaintiff's motion is due to be granted.

This is a suit for copyright infringement under Title 17 of the United States Code. Plaintiffs filed their complaint on October 26, 1990, alleging five causes of action for such infringement based on defendants' public performance of copyrighted material. Plaintiffs seek injunctive relief and statutory damages. On December 6, 1990, defendants filed an answer denying the material allegations of plaintiffs' complaint. Plaintiffs' pending motion for summary judgment is based on the pleadings, the deposition of defendant Lindell Bates taken on March 4, 1991 and the affidavits of Paula Woodall, Danny L. Woodall, Anthony Perretti and Jane E. Schaeffer. In opposition to the motion, defendants have filed the affidavit of Lindell Bates.

The following facts are not disputed. At the time of the alleged infringements, Towne Tavern, located on Highway 280 in Sylacauga, Alabama, was owned and operated by defendants Towne Tavern Inc. and Lindell Bates. On November 17–18, 1990, Paul and Danny Woodall visited the Towne Tavern as investigators for the American Society of Composers, Authors and Publishers ("ASCAP"); while there they each made a contemporaneous list of the titles of all musical compositions performed during their visit. ASCAP is an unincorporated membership association whose more than 48,000 members write and publish musical compositions. Each member grants to ASCAP a non-exclusive license to authorize public performances of the members' copyrighted music. On behalf of all of its members, ASCAP licenses the right to perform publicly all of the copyrighted songs in the ASCAP repertory. ASCAP's licensees include television networks and stations, radio networks and stations, restaurants, nightclubs, hotels and other kinds of music users.

During their visit to the Towne Tavern on November 17–18, 1990, the Woodalls reported that the following songs were played either by the live band or on the jukebox in the establishment:

1. "Angelia,"
2. "Simply Irresistible,"
3. "Angel Eyes,"
4. "Electric Youth," and
5. "Blue Eyes Crying in the Rain."

Plaintiffs, who are all members of AS-CAP, own the respective copyrights in these musical compositions. At the time of the alleged infringements, Towne Tavern was not licensed by ASCAP to perform any of the copyrighted musical works in its repertory, including the above songs.

To establish a cause of action for copyright infringement by unauthorized public performance, the plaintiff must show:

1. the originality and authorship of the compositions involved;
2. compliance with the formalities required to secure a copyright under Title 17, United States Code;
3. plaintiffs' ownership of the copyrights of the relevant compositions;
4. defendant's public performance of the compositions; and
5. defendant's failure to obtain permission from the plaintiffs or their representatives for such performance.

*See Almo Music Corp. v. 77 East Adams, Inc.,* 647 F.Supp. 123, 124 (N.D.Ill.1986). In this case plaintiffs have satisfied the first three elements listed above by filing copies of copyright registrations for the works involved. *See* Affidavit of Anthony Perretti, filed May 21, 1991, and exhibits thereto. Copyright registration certificates constitute *prima facie* evidence of the facts stated therein, 17 U.S.C. § 410(c), and establish proof of plaintiffs' ownership of valid copyrights in the compositions in suit. *Flick–Reedy Corp. v. Hydro–Line Manufacturing Co.,* 351 F.2d 546, 549 (7th Cir. 1965), *cert. denied* 383 U.S. 958, 86 S.Ct. 1222, 1223, 16 L.Ed.2d 301 (1966); *Interstate Hotel Co. v. Remick Music,* 58 F.Supp. 523, 531 (D.Neb.1944), *aff'd* 157 F.2d 744 (8th Cir.1946), *cert. denied* 329 U.S. 809, 67 S.Ct. 622, 623, 91 L.Ed. 691

(1947); *Boz Scaggs Music v. KND Corp.,* 491 F.Supp. 908, 913 (D.Conn.1980).

■ The uncontradicted affidavits of Paula and Danny Woodall attesting to the performance of plaintiffs' songs at the Towne Tavern on November 17–18, 1990 conclusively prove the performance of such songs, thereby satisfying the fourth element of proof.[1] As for the fifth element, it is undisputed that defendants did not obtain a license from ASCAP authorizing the public performance of the songs at issue, nor did it pay any license fees to the organization.

Defendants argue that summary judgment should not be granted because the infringing performances may have been played on a licensed "jukebox." Defendant Bates further argues that he is not jointly liable with the corporation, and that he was unaware of the need to obtain permission to perform the copyrighted works.

■ Such defenses are ineffective; moreover, they do not raise a material issue of fact precluding summary judgment. The evidence shows that three of the infringing performances ("Angelia," "Electric Youth," and "Simply Irresistible") were in fact played on the "jukebox" located in the tavern. Defendants, however, are not entitled to the so-called "jukebox exemption" set forth in 17 U.S.C. § 116. To qualify for the exemption, a jukebox must be "located in an establishment making no direct or indirect charge for admission." 17 U.S.C. § 116(e)(1)(B). Otherwise, the machine does not fall within the statutory definition of a "coin-operated phonorecord player," and defendant may not avoid liability by obtaining a compulsory "jukebox" license. Defendants admit that on November 17, 1989, the Towne Tavern charged an admission or cover charge of $2.00. *See Defendants' Answers to Interrogatories,* filed December 10, 1990, no. 34. The fact that not all customers paid the charge does not place defendants within the exemption; that collection efforts are unsuccessful does not mean

that the amount is not "charged." *See Sweet Summer Night Music v. Aiken,* 659 F.Supp. 52, 53 (D.Alaska 1987). Since there was a cover charge on the night of the infringements, the "jukebox" located in the Towne Tavern does not satisfy the definition of § 116(e), and therefore any performances by it of copyrighted work constitutes an infringement, regardless of whether the machine itself was covered by a compulsory jukebox license.

■ Moreover, it is no defense for defendant Bates to claim that he did not oversee the playing of the copyrighted songs. The test for finding a corporate officer jointly and severally liable with his corporation for copyright infringement is whether the officer "has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Shapiro Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir. 1963). Defendant Bates admits that in 1989 he was the sole stockholder of Towne Tavern, Inc. and the corporate president. *See Affidavit in Response to Plaintiff's Motion for Summary Judgment,* filed June 19, 1990 (hereinafter referred to as the "Bates Affidavit"). He testified during his deposition that he was actively involved in the Towne Tavern's business—that he hired managers, signed the liquor license, arranged for the corporation's lease, and did whatever was necessary to run the business. Bates depo., pp. 9–14. Bates further testified that he was paid income by Towne Tavern, Inc. Bates depo., p. 14.

Clearly Bates had the "ultimate authority" over the activities of the corporation, as well as a direct financial interest in the business. The fact that he may have hired someone to handle day-to-day affairs and that he had no role in the selection of music played in the club is irrelevant; the imposition of vicarious liability for copyright infringement on a controlling individual is premised on the belief that such a person is in a position to control the conduct of the "primary" infringer. *Boz Scaggs Music,*

---

**1.** Defendant Bates claims no knowledge of what songs were played at the Towne Tavern on November 17–18, 1990. *See Defendants' Answers to Interrogatories,* no. 14; *see also* Bates Affidavit, filed June 19, 1991.

491 F.Supp. at 914. Contrary to defendant's arguments, the evidence shows that Bates had such control; therefore, as a matter of law he is jointly liable with his corporation for the copyright infringement.

■ Finally, defendant Bates' claim that he was unaware of the need to obtain a license from ASCAP does not create a material issue of fact. While he states in his affidavit that he never received any personal visits or phone calls from ASCAP representatives, in his earlier deposition he testified that he could not *recall* any such contacts.[2] The law in this circuit is that a party cannot give "clear answers to unambiguous questions" in a deposition and thereafter raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction. *Rollins v. Tech South, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987) (*citing Van T. Junkins and Associates v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir.1984)). When this occurs, the court may disregard the affidavit as a sham.

■ In this case defendant Bates has made no attempt to explain the contradictions between his June 19, 1991 affidavit and his earlier deposition testimony. Moreover, the evidence shows that he was in fact contacted by ASCAP. Bates himself testified that his signature appeared on a receipt for a letter sent by ASCAP by certified mail, which letter had an ASCAP license attached to it. *See* Bates depo., pp. 27–28. Furthermore, Gary Anderson states in his affidavit that Lindell Bates received personal visits and phone calls from ASCAP representatives on numerous occasions and attaches documentary evidence of such contacts. *See Affidavit of Gary Anderson,* and exhibits thereto. The court, therefore, finds that defendant Bates had at least constructive knowledge of his need for a license, and his professed ignorance at this late date is no defense to plaintiffs' motion.

Summary judgment is appropriate where, as here, the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.Pr. 56(c). After adequate time for discovery, summary judgment is mandatory against a party failing to show the existence of an element essential to the proof of its case at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party moving for summary judgment has the burden of establishing the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When a motion for summary judgment had been made properly, the nonmoving party may not rely solely on the pleadings, but by affidavits, depositions, answers to interrogatories and admissions must show that there are specific facts demonstrating that there is a genuine issue for trial. Fed. R.Civ.Pr. 56(c), (e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

■ Applying the above standards, the court finds that plaintiffs have established the absence of any material fact issue, notwithstanding the Bates affidavit, and that they are entitled to judgment on their claims as a matter of law. As for the appropriate relief, 17 U.S.C. § 504 provides for statutory damages of not less than $500.00 and not more than $20,000.00 per

---

**2.** In his deposition, Bates answered as follows:

Q: You don't recall receiving any letters or written communication from ASCAP?
A: No.
Q: Do you recall receiving any telephone calls or personal visits from ASCAP?
A: No.
Q: Is it your testimony that you didn't get any letters and didn't receive any calls or personal visits or you just don't know?
A: I don't know.

Q: Now, you said something earlier that I need to go into a little bit. I believe you said last year you were out drunk about half the time?
A: No, I said last eight years.
Q: Last eight years you were out drunk?
A: Yes.
Q: Could it be that you had visits and calls and communications and just don't remember it due to intoxication?
A: I don't know.
Bates depo., pp.

infringement. In cases such as this, where the plaintiffs seek statutory rather than actual damages, and where defendants knowingly and deliberately infringed plaintiffs' copyright, courts typically award more than the minimum statutory damages and more than the infringer would have paid in license fees.

■ Here the evidence shows that had defendants been properly licensed by AS-CAP through January 1, 1991, they would owe approximately $3,117.00 in license fees. The evidence further shows that AS-CAP repeatedly notified defendants of the need to obtain such a license and that defendants repeatedly refused to do so. Accordingly, the court finds that damages in the amount of $2000.00 per infringement, for a total of $10,000.00, is an appropriate amount to deter defendants from repeating their infringing conduct. Plaintiffs are also entitled to an injunction prohibiting further infringing performances. *See* 17 U.S.C. § 502(a).

Finally, plaintiffs are due to recover the costs of this action and reasonable attorneys fees pursuant to 17 U.S.C. § 505. The affidavit of Jane E. Schaeffer reflects that the attorneys for plaintiffs have billed a total of 19 hours on the case and plaintiffs have incurred legal fees and costs in the amount of $2,387.00. The court finds this to be a reasonable amount, given the nature of the case and the time spent.

In sum, plaintiffs' motion for summary judgment is due to be granted and judgment entered in plaintiffs' favor.