**BROADCAST MUSIC, INC.,
et al., Plaintiffs,**

**v.**

**BLUEBERRY HILL FAMILY RESTAU-
RANTS, INC. d/b/a Blueberry Hill
Restaurant, et al., Defendants.**

**No. CV–S–93–1217–LDG (LRL).**

United States District Court,
D. Nevada.

July 12, 1995.

The attorney for the plaintiffs was Todd M. Touton, Lionel Sawyer & Collins, Las Vegas, Nevada. The attorney for the defendants was Crystal L. Eller, Las Vegas, Nevada.

***

## ORDER

GEORGE, Chief Judge.

Plaintiffs Broadcast Music, Inc. and thirty-four owners of copyrighted music (collectively "BMI") sue Defendants Blueberry Hill Family Restaurants and Howard Quam (collectively "Blueberry Hill") for copyright infringement. BMI moved for summary judgment (# 11). Blueberry Hill opposed and countermoved for summary judgment (# 14). This matter is before the court on the Magistrate Judge's recommendation (# 19) that the court grant BMI's motion, hold all Defendants jointly and severally liable, award Plaintiffs statutory damages in the amount of $2,000 for each of the 33 documented infringements, permanently enjoin further infringements, and deny Blueberry Hill's countermotion. Blueberry Hill has filed objections (# 20), which BMI has opposed (# 21).

Blueberry Hill first argues that the Magistrate Judge did not properly consider applicable law in applying the fair use doctrine. The court disagrees. The fair use doctrine, codified at 17 U.S.C. § 107, provides in relevant part:

> In determining whether the use made of a work in any particular case is a fair use, the factors to be considered shall include, (1) the purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

The Magistrate Judge properly considered all four factors. As to the first factor, the Magistrate Judge rejected Blueberry Hill's argument that the music was non-commercial because patrons of the restaurant did not directly pay for the music. As reported by the Magistrate Judge, the purpose and character of Blueberry Hill's use of the copyrighted music, to enhance the dining experience in a restaurant, is plainly commercial. The second factor looks to the nature of the copyrighted material. Blueberry Hill concedes and the Magistrate Judge reported that the copyrighted music was of an artistic nature and was meant for entertainment. As artistic material, any claim of fair use is more strictly considered than that of factual or informational material. As to the third factor, Blueberry Hill concedes that each copyrighted song was played in its entirety. Blueberry Hill's unsupported argument that

its use, in the context of total playings worldwide, was *de minimis* is simply irrelevant to this factor. The fourth factor needs little consideration since plaintiffs may opt for statutory rather than actual damages. *See* 17 U.S.C. § 504(c). The Magistrate Judge recommended that the court accept BMI's request for statutory damages. In sum, Blueberry Hill has completely failed to show that its use was fair.

 Blueberry Hill next argues that it was an "innocent infringer" pursuant to 17 U.S.C. § 504(c)(2). In light of the evidence shown by BMI, the argument is without any merit. BMI showed that it mailed nine letters, made eleven phone contacts, and paid one personal visit. As the letters were mailed, the court presumes they were received by Blueberry Hill. Nev.Rev.Stat. 47.250, F.R.E. 302. In addition, BMI has shown that it sent several pieces of correspondence by certified mail or overnight delivery. The return receipts show that Blueberry Hill refused delivery of the letters.

In rebuttal Blueberry Hill argues only that several of its personnel could not recall the letters, calls or visit. The argument suffers, however, in light of the deposition testimony that several of Blueberry Hill's personnel discussed, during the relevant time period, the need to license the music. That discussion shows that Blueberry Hill actually received some, if not all, of the correspondence sent by BMI. The argument weakens further given the volume of correspondence initiated by BMI. This court will not accept Blueberry Hill's implicit, but unsupported, argument that nine letters went undelivered. The argument approaches the frivolous given that Blueberry Hill recognized and refused to accept mail from BMI that required a return receipt. Simply stated, Blueberry Hill cannot claim innocence after actively, though ineffectively, attempting to ignore BMI.

Accordingly,

The Court ADOPTS the report and recommendation (# 19) of the Magistrate Judge as follows:

IT IS ORDERED that Plaintiffs' Motion for Summary Judgment (# 11) is GRANTED as follows:

a. All Defendants are held jointly and severally liable;

b. For each of the 33 documented infringements, Plaintiffs are awarded statutory damages pursuant to 17 U.S.C. 504(c)(2) in the amount of $2,000 per documented infringement; and

c. Blueberry Hill is permanently enjoined from further copyright infringements of music licensed by Broadcast Music, Inc.

IT IS FURTHER ORDERED that Defendants' Countermotion for Summary Judgment (# 14) is DENIED.

IT IS FURTHER **ORDERED** that the Court will entertain a motion for attorney's fees from Plaintiffs.

## REPORT & RECOMMENDATION

(Summary Judgment)

May 18, 1995

LEAVITT, United States Magistrate Judge.

This action is before the Court on Plaintiffs' Motion for Summary Judgment (# 11, filed December 5, 1994). The Court has considered the motion, Defendants' Opposition to Plaintiffs' Motion for Summary Judgment and Countermotion for Summary Judgment (# 14, filed January 10, 1995), Plaintiffs' Reply (# 16, filed February 6, 1995), as well as the oral arguments of the parties on May 5, 1995. Based thereon, the undersigned submits this Report & Recommendation.

## I. BACKGROUND

Plaintiff Broadcast Music, Inc. ("BMI") is a not-for-profit performing rights society which licenses the right to publicly perform copyrighted music. BMI together with thirty-four other plaintiffs, all of whom are the copyright owners of various compositions which are the subject of this lawsuit, brought this copyright infringement action pursuant

to 17 U.S.C. § 101, *et seq.* ("the Copyright Act") based on the defendants' alleged unauthorized public performance of thirty-three (33) musical compositions from the BMI repertoire.

Defendant Blueberry Hill Family Restaurants, Inc. ("Blueberry Hill") owns and operates several restaurants in Las Vegas, Nevada, known as the Blueberry Hill Restaurants. The restaurants contain jukeboxes which play recorded music free of charge. At all relevant times defendant Howard Quam was the president and sole shareholder of Blueberry Hill.

Some time prior to January, 1993, BMI learned that Blueberry Hill was playing recorded musical compositions "without a license from BMI, or without permission from the copyright owners whose music was being publicly performed." Declaration of Lawrence E. Stevens, Exhibit 1, attached to # 11, at 2. BMI alleges that "on January 15, 1993, it first informed Blueberry Hill of the need to obtain permission for public performance of copyrighted music and requested that they execute a BMI license agreement." # 11 at 3. BMI claims that during 1993 it made repeated written and telephonic requests, as well as one personal visit, to urge Blueberry Hill to enter into a licensing agreement and to warn of the consequences of failing to do so. Moreover, BMI alleges that on June 3 and 4, and August 5, 6, and 8, 1993, its investigator visited Blueberry Hill restaurants and noted the particular public performances of BMI-licensed music alleged in the complaint. *See id.* at 3–5. After defendants failed to respond to these numerous entreaties, plaintiffs filed the instant action.

In its motion for summary judgment (# 11), BMI alleges there are no genuine issues of material fact in regard to its infringement claim and that plaintiffs are entitled to judgment as a matter of law. Plaintiffs seek several forms of relief, including "permanent injunctive relief, statutory damages for each claim of infringement, full costs and reasonable attorney's fees." *Id.* at 13.

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 requires entry of summary judgment when "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.,* 693 F.2d 870, 883 (9th Cir.1982). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1306 (9th Cir.1982); *Admiralty Fund v. Jones,* 677 F.2d 1289, 1293 (9th Cir.1982). All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material facts exists for summary judgment purposes. *Poller v. CBS, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor,* 677 F.2d 1297, 1299 (9th Cir.1982).

The respondent, however, cannot simply rely on its pleadings. A motion for summary judgment requires the responding party to go beyond its pleadings and to come forward with sufficient evidence for its claims to create a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). There is no genuine issue of fact "where the record taken

as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted).

In sum, the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). *See also Avia Group Int'l, Inc. v. L.A. Gear Cal.*, 853 F.2d 1557, 1560 (Fed.Cir.1988).

## III. DISCUSSION

### A. Prima Facie Copyright Infringement Claim

■ In a copyright infringement action a plaintiff must establish five elements:

1. Originality and authorship of the copyrighted works involved;

2. Compliance with the formalities of the Copyright Act;

3. Proprietary rights in the copyrighted works involved;

4. Public performance of the compositions involved; and

5. Lack of authorization for public performance.

*See* # 11 at 6 (citing *Broadcast Music, Inc. v. Jeep Sales & Service Co.*, 747 F.Supp. 1190, 1192 (E.D.Va.1990); *Fermata Int'l Melodies v. Champions Golf Club, Inc.*, 712 F.Supp. 1257, 1259 (S.D.Tex.1989), *aff'd*, 915 F.2d 1567 (5th Cir.1990)).

Here, BMI points to evidence to support each required element, *see* # 11 at 6–8, and the Court is satisfied that there is no genuine dispute as to whether BMI has set forth a *prima facie* copyright infringement claim. In regard to the first three elements, BMI has submitted the declaration of its Assistant General Counsel, Judith M. Saffer. *See* Exhibit 3, attached to # 11. Her declaration "sets forth the names of the authors and publishers of each composition, the date of copyright registration and the registration

number." # 11 at 7. BMI establishes the fourth element, public performance of the copyrighted material, through the declaration of Peggy Ortega, the BMI investigator who noted the various BMI-licensed songs that were played in the Blueberry Hill restaurants during certain days in June and August, 1993. *See* Exhibit 5, # 11. Finally, BMI offers the declaration of its Assistant Vice President of General Licensing, Lawrence E. Stevens, in support of the fifth element, unauthorized public performance of the BMI music. *See* Exhibit 1, # 11. Blueberry Hill has not offered any evidence to refute the declarations of BMI's representatives.

Rather than challenging BMI's arguments and evidence directly, Blueberry Hill opposes BMI's motion and moves for summary judgment itself by asserting that certain exceptions apply which defeat BMI's infringement action. The Court considers these alleged exceptions in turn.

### B. Exceptions

#### 1. "Jukebox Exception"

■ Blueberry Hill contends that the so-called "jukebox exception" or "exemption" to the Copyright Act relieves defendants of liability. Blueberry Hill directs the Court's attention to the old, repealed version of 17 U.S.C. § 116(a) [the "jukebox exemption"], which provides in relevant part:

(1) The proprietor of the establishment in which the public performance takes place is not liable for infringement with respect to such public performance unless—

(A) such proprietor is the operator of the phonorecord player; or (B) such proprietor refuses or fails, within one month after receipt by registered or certified mail of a request ... by the copyright owner, to make full disclosure, by registered or certified mail, of the identity of the operator of the phonorecord player.

(2) The operator of the coin-operated phonorecord player may obtain a compulsory license to perform the work publicly on that phonorecord player by filing the appli-

cation, affixing the certificate, and paying the royalties provided by subsection (b). 17 U.S.C. § 116(a).[1]

Pointing to the statutory language, Blueberry Hill contends that BMI has failed to allege or produce evidence which establishes defendants' operation of the juke boxes in the restaurants. Defendants' Motion, # 14, at 2. Moreover, Blueberry Hill argues that BMI has failed to comply with the statutory because it did not send letters to Blueberry Hill regarding a licensing agreement by *registered* or *certified* mail as required. "As can be seen by the depositions ..., the managers of the various restaurants involved in this lawsuit have absolutely no recollection of ever receiving any of BMI's letters." *Id.* at 4. Blueberry Hill argues that because there is a genuine dispute as to whether it received the BMI correspondence, BMI's summary judgment motion must be denied, and Blueberry Hill, in fact, is entitled to summary judgment. *See id.*

In response, BMI asks the Court to disregard Blueberry Hill's "jukebox exemption" argument in its entirety because the exception simply doesn't apply. "While defendants correctly note that the jukebox exception was repealed in December 1993 by Public Law 103–198, defendants should have known that the jukebox exception, and the language they quote from 17 U.S.C. § 116(a)(1) was suspended more than three years earlier." Plaintiffs' Reply, # 16, at 2. Therefore, the exemption cannot be a defense to the infringements which allegedly occurred in the summer of 1993. The Court agrees.

The so-called "jukebox exemption" cannot apply to the present case because it had in fact been suspended prior to the time period here at issue. The old relevant section of the Copyright Act, 17 U.S.C. § 116, to which Blueberry Hill refers, provided for a compulsory registration system that allowed jukebox operators to perform publicly any copyrighted music, upon the payment of a fixed fee to the Copyright Office in Washington, D.C.[2] This compulsory licensing scheme, however, has been replaced by a negotiated licensing system in which performing rights societies, such as BMI, and the jukebox owners, such as Blueberry Hill, enter into "blanket license agreements" that allow the music users the right to publicly perform any of the works in the performing rights society's repertoire. *See* # 11 at 2–3. The new, negotiated licensing system was initially codified as § 116A as part of the Berne Convention Implementation Act of 1988 (BCIA). *See* # 16 at 2. As BMI accurately summarizes:

> Section 116A set forth a scheme for negotiations among the performing rights societies [including BMI] as agents of the copyright holders, and the trade group representing jukebox owners, the Amusement and Music Operators of America (AMOA), regarding the terms and rates of licenses for performances of copyrighted musical works in their repertoires by jukeboxes. After March 1, 1989, the effective date of the BCIA, if the Performing Rights Societies and the AMOA had reached an agreement regarding negotiated licenses, [the new] § 116A was to apply. [The old] Section 116 would only remain as a fall-back "should such negotiations fail ..." The three U.S. performing rights societies entered into an agreement with the AMOA on March 1, 1990. That same month, the Copyright Royalty Tribunal recognized the agreement as being in effect and suspended the provisions of [the old] § 116 until

---

1. As explained *infra,* the repealed version has been replaced by the current version of § 116, which provides in relevant part:

 **(b) Negotiated licenses.—**
 **(1) Authority for negotiations.—**Any owners of copyright in works to which this section applies and any operators of coin-operated phonorecord players may negotiate and agree upon the terms and rates of royalty payments for the performance of such works and the proportionate division of fees paid among copyright owners, and may designate common agents to negotiate, agree to, pay, or receive such royalty payments.
 17 U.S.C. § 116(b)(1).

2. For a comprehensive history of the jukebox exception and the old § 116, see Scott M. Martin, *The Berne Convention and the U.S. Compulsory License for Jukeboxes: Why the Song Could Not Remain the Same,* 37 J. COPYRIGHT SOC'Y U.S.A. 262 (1990). *See also Broadcast Music, Inc. v. Star Amusements, Inc.,* 44 F.3d 485, 486–87 (7th Cir.1995); *ACEMLA v. Copyright Royalty Tribunal,* 763 F.2d 101 (2d Cir.1985).

December 31, 1999. 55 Fed.Reg. 11428–02.[3]

# 16 at 2–3.

Congress "formalized" the suspension of the old § 116 in December, 1993, by repealing it and replacing it (as well as the temporary § 116A) with the current version of § 116, which provides for the negotiated licensing system. *See id.* at 3. Thus, although Blueberry Hill correctly observes that the official date of repeal of the old § 116 did not occur until December 1993, and that Blueberry Hill's reported infringing activity occurred during certain days in June and July 1993, *see* # 14 at 4–5, nevertheless, because the old § 116 (the "jukebox exemption") had been suspended since March 1990, it provides no defense to Blueberry Hill's infringing actions in the summer of 1993.

### 2. "Fair Use Exception"

Blueberry Hill next argues that "[d]efendants have a legitimate and colorful claim of defense that their use of the music was a 'fair use' under 17 U.S.C. Section 107." *See* # 14 at 5–10. The Court disagrees.

The preamble to § 107 provides, in relevant part, that "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of a copyright." In limited circumstances the "fair use" doctrine allows courts "to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Iowa State University Research Foundation, Inc. v. American Broadcasting Cos.,* 621 F.2d 57, 60 (2d Cir.1980).

For example, a classic illustration of fair use is quoting from another's work in order to criticize it. The principle has most often been applied to works in the fields of science, law, medicine, history and biogra-

phy. The fair use doctrine offers a means of balancing the exclusive rights of a copyright holder with the public's interest in dissemination of information affecting areas of universal concern, such as art, science and industry. Put more graphically, the doctrine distinguishes between "a true scholar and a chiseler who infringes a work for personal profit." Hearings on Bills for the General Revision of the Copyright Law Before the House Comm. on the Judiciary, 89th Cong. 1st Sess., ser. 8, pt. 3, at 1706 (1966) (Statement of John Schulman). *Wainwright Sec. v. Wall Street Transcript Corp.,* 558 F.2d 91, 94 (2d Cir.1977).

The defendants have made no showing that the operation of jukeboxes in Blueberry Hill restaurants merely to enhance the enjoyment of a dining experience remotely resembles the "fair uses" described in § 107. Moreover, the attempt to argue the relevance of the fair use doctrine merely because Blueberry Hill's customers were not required to insert coins into the jukeboxes involves a quantum leap of logic. Playing copyrighted songs in a commercial setting to enhance the quality of the paying customers' experience is not intended to be an act of scholarship; it is intended only to increase personal profits. Playing such songs requires a license as a matter of law.

### C. Liability of Howard Quam

 BMI argues that Quam is personally liable for the copyright infringement because "[t]his case is similar to numerous other cases wherein proprietors of restaurants, lounges, and clubs are held personally liable for copyright infringement occurring on their premises, even though they did not directly control the content of the music performances." # 11 at 9 (citations omitted). It is uncontroverted that Howard Quam was the director, president and sole shareholder of Blueberry Hill Family Restaurant, Inc., "the

**3.** The Copyright Royal Tribunal stated:
[T]he Tribunal finds that, based on the evidence submitted by the parties and the Congressional intent expressed in the legislative history [of § 116A], a voluntary agreement is in effect providing permission to use a quantity of musical works not substantially smaller than the quantity of such works performed on juke-

boxes from March 1, 1988 to March 1, 1989. The term of the agreement extends to December 31, 1999. Consequently, the jukebox compulsory license [of § 116] is suspended until December 31, 1999.
*Determination of Negotiated Jukebox Licenses,* 55 Fed.Reg. 11,429 (1990). *See also* 37 C.F.R. § 306.3(e) (1991) (codifying the same).

entity that at all times relevant 'operated and maintained' each of the five infringing restaurants." *Id.* at 10 (referring to Exhibit 4, Defendants' Admissions).

"The test for finding a corporate officer jointly and severally liable with his corporation for copyright infringement is whether the officer 'has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'" *Chi–Boy Music, v. Towne Tavern, Inc.,* 779 F.Supp. 527, 530 (N.D.Ala.1991) (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir.1963)). *See also Realsongs v. Gulf Broadcasting Corp.,* 824 F.Supp. 89, 91 (M.D.La.1993). In *Chi–Boy Music,* the individual defendant was the sole stockholder and president of the defendant tavern which infringed upon plaintiffs' copyrights by playing musical compositions through jukeboxes without authorization. The court stated,

> [t]he fact that [the individual defendant] may have hired someone to handle day-to-day affairs and that he had no role in the selection of music played in the club is irrelevant; the imposition of vicarious liability for copyright infringement on a controlling individual is premised on the belief that such a person is in a position to control the conduct of the "primary" infringer.

*Chi–Boy Music,* 779 F.Supp. at 530–31 (citing *Boz Scaggs Music v. KND Corp.,* 491 F.Supp. 908, 914 (D.Conn.1980)).

Like the individual defendant in *Chi–Boy Music,* it is uncontested that Quam had the final say as to all matters relating to the operation of the restaurant, including the employment of day to day managers, # 11 at 11 (referring to deposition testimony), and had the power to control the conduct of the "primary" copyright infringers. Moreover, as required by the test for individual liability, Quam had a "direct financial interest" in the business. *See Chi–Boy Music,* 779 F.Supp. at 530. Quam received a salary, as well as rent and corporate dividends, paid to him "in whatever amounts he might determine." # 11 at 13 (referring to Exhibit 6, Deposition of Pamela Wasiuta). Notably, Blueberry Hill has offered no evidence to refute this characterization of Quam's authority. Therefore, as a matter of law Quam should be held jointly liable with his corporation for the copyright infringement. *Chi–Boy Music,* 779 F.Supp. at 531.

## D. Remedies

### 1. Statutory Damages

Assuming the Court finds that defendants infringed upon plaintiffs' copyrights, Blueberry Hill alternatively argues that, at most, it was an "innocent infringer" within the meaning of 17 U.S.C. § 504(c)(2), "and as such should be ordered to pay no more than $200.00 per established infringement and Plaintiffs should not recover attorney's fees." # 14 at 10.[4] Blueberry Hill first notes that it was not aware that its acts constituted copyright infringement.

> [A]lthough Plaintiffs may have established that they sent various letters and made various phone calls to Defendants, they have not established that those letters were ever received by Defendants nor that any of the alleged phone calls were re-

---

4. The Copyright Act essentially provides for three levels of statutory damages. The court normally has the discretion to award damages within a certain range, or may award increased damages if the infringer's actions were willful, or may award minimal damages if the infringer's actions were "innocent." The statute provides, in relevant part:

 **(c) Statutory Damages.—**
 (1) Except as provided by clause (2) of this subsection, the copyright owner may elect ... to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action ... in a sum of not less than $500 or more than $20,000 as the court considers just....

 (2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $100,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court it [sic] its discretion may reduce the award of statutory damages to a sum of not less than $200....

 17 U.S.C. § 504(c).

ceived by Defendants. To the contrary, it has been shown above that Defendants have no recollection of receiving letters from Plaintiffs, receiving phone calls from Plaintiffs, or being personally visited by Plaintiffs.

*Id.* at 10.

Alternatively, Blueberry Hill argues that even if the Court assumes that Blueberry Hill received the BMI correspondence, the letters did not give adequate notice of the purported copyright violations.

Although the letters allegedly sent by Plaintiffs cover various topics such as responsibilities under United States Copyright Law and the necessity of entering into a licensing agreement, nowhere in any of the letters is it communicated which songs on the various juke boxes were being played in violation of Plaintiffs' copyrights.

*Id.* at 12.

Additionally, Blueberry Hill contends that any copyright infringement on its part is excusable and understandable because Blueberry Hill believed in good faith that a separate company, the Status Vending Corp., was responsible for maintaining the jukeboxes as well as taking care of any licensing responsibilities. See *id.*

BMI contends that Blueberry Hill cannot prove they are "innocent infringers" under 17 U.S.C. § 504(c)(2). Moreover, BMI maintains that the "uncontroverted evidence" shows that Blueberry Hill willfully failed to comply with federal copyright law, and therefore BMI should be awarded increased damages under § 504(c)(2). *See* # 16 at 5–9.

BMI initially points to the "tremendous burden for defendants [to show that they are "innocent infringers"], considering plaintiff BMI mailed nine letters, made eleven phone contacts with Blueberry Hill personnel, and paid one personal visit to defendants to make defendants aware their behavior was illegal." *Id.* at 6 (referring to exhibits). Next, BMI notes that Blueberry Hill failed to produce evidence "to show they didn't know they were infringing or that they didn't receive the letters." *Id.* Moreover, defendants' deposition testimony proved that at least two Blueberry Hill restaurant managers "knew something" in regard to the fact that Blueberry Hill would have to pay a licensing fee for playing the jukebox music. *Id.* Finally, BMI has attached to its Reply copies of some of the correspondence it sent to defendants by certified mail or overnight delivery service, and copies of the return receipts. "The return receipts show that the letters were *refused....* The act of refusing mail from BMI shows *willfulness* sufficient for this Court to impose increased damages under § 504(c)(2) as well as attorneys' fees." *Id.* at 6–7 (emphasis in original).

■ The Court recommends awarding damages to plaintiffs at the requested $2000 per infringement. Without reaching the question of whether Blueberry Hill's actions were willful, the Court observes that the $2000 figure is well within the range prescribed in § 504(c)(1) and consistent with awards in comparable cases decided by summary judgment. *See, e.g., Broadcast Music, Inc. v. Sonny Inv. Assocs., Inc.,* 865 F.Supp. 110 (W.D.N.Y.1994) (defendants found jointly and severally liable for statutory damages in the amount of $2000 per infringement); *Broadcast Music, Inc. v. Aartie Restaurant Management, Inc.,* No. 92–486–Civ–T–21C, 1993 WL 106894 (M.D.Fla.1993) ($1000 per infringement found reasonable); *Crabshaw Music v. K–Bob's of El Paso, Inc.,* 744 F.Supp. 763 (W.D.Tex.1990) ($1500 per infringement found reasonable).

A key factor in the courts' determinations of damages is whether the infringing defendants paid any attention to the plaintiffs' correspondence. For example, in *Aartie Restaurant,* the court stated, "In view of the fact that the defendants repeatedly ignored the plaintiff's attempts to enter into a licensing agreement, the Court finds that awarding damages in the amount of $1,000.00 per act of infringement is appropriate." *Aartie Restaurant Management,* No. 92–486–Civ–T–21C, 1993 WL 106894, at *3. *Accord Crabshaw Music,* 744 F.Supp. at 768.

On this point, Blueberry Hill argues only that the record shows that its managers "have no recollection" of receiving the BMI correspondence. However, as BMI contends, defendants cannot defeat plaintiffs'

summary judgment motion by simply asserting a failure of memory. "A sworn statement that the non-movant has no knowledge of an asserted fact is not sufficient to create a material issue of fact when the movant has brought forth competent evidence of the fact asserted." # 16 at 7 (citing *United States v. Halpern*, 260 F.2d 590 (3d Cir.1958)).

The Court finds on this record that Blueberry Hill cannot prove that it was a mere "innocent infringer" under 17 U.S.C. § 504(c)(2). BMI has produced substantial evidence documenting its numerous telephonic and written contacts with defendants for the express purpose of advising them to enter into a licensing agreement. In view of this evidence, it cannot be reasonably found that Blueberry Hill was "not aware or had no reason to believe" that its continuing acts violated BMI's copyrights.

## 2. Injunctive Relief

█ BMI asks this Court for a permanent injunction against Blueberry Hill to prevent further copyright infringements. Blueberry Hill contends that injunctive relief is unnecessary because Blueberry Hill's actions were not willful. *See* # 14 at 12. Moreover, "[o]nce the Complaint in this case was filed and Defendants became aware of the problems that were being caused by the juke boxes, they began negotiations to enter into a proper licensing agreement with the American Society of Composers, Authors and Publishers (ASCAP)." *Id.* at 12–13. Blueberry Hill contends that because it has ceased any infringing activity by entering into a licensing arrangement with ASCAP, there's no risk of future infringement against BMI. *Id.* at 13.

The Copyright Act provides in relevant part: "Any court having jurisdiction of a civil action arising under this title may ... grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Courts have consistently held that such relief is appropriate when liability has been established and there is a threat of continuing violations. *See, e.g., Tempo Music v. Christenson Food & Mercantile Co.*, 806 F.Supp. 816, 821 (D.Minn.

1992); *Superhype Publishing, Inc. v. Vasiliou*, 838 F.Supp. 1220, 1226 (S.D.Ohio 1993).

Notwithstanding that Blueberry Hill has entered into licensing agreements with ASCAP, the Court cannot rest assured that Blueberry Hill will assiduously avoid continuing violations *vis a vis* BMI. As shown above, Blueberry Hill's violations of BMI's rights were clear. The arrogance with which Blueberry Hill thwarted BMI's efforts to protect its copyright interests, and the thin excuses Blueberry Hill offered when confronted with the accusations in BMI's complaint, do not inspire confidence that Blueberry Hill poses no threat of future infringements.

## 3. Attorney's Fees and Costs

BMI argues that "Defendants have willfully ignored their obligation under the Copyright Act, forcing Plaintiffs to engage in litigation to enforce their rights. Accordingly, Plaintiffs should be awarded their full costs and reasonable attorney's fees." # 11 at 16. Blueberry Hill also requests an award of fees and costs in the event that the Court finds that defendants are entitled to summary judgment. *See* # 14 at 14.

Under the Copyright Act, "the court in its discretion may allow the recovery of full costs.... [T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The resolution of this issue is premature at this point. The presiding district judge must first make his final determination whether plaintiffs are, indeed, the "prevailing party."

## RECOMMENDATION

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that Plaintiffs' Motion for Summary Judgment (# 11) should be granted to the following extent:

1. All Defendants should be held jointly and severally liable;

2. Plaintiffs should be awarded statutory damages under 17 U.S.C. § 504(c)(2) in the amount of $2000 per documented infringement; and

3. Blueberry Hill should be permanently enjoined from further copyright infringements.

It is further recommended that Defendants' Countermotion for Summary Judgment (# 14) should be denied.